[No. B215595. Second Dist., Div. Three. July 28, 2010.]

In re the Marriage of XIA GUO and XIAO HUA SUN.
XIA GUO, Respondent, v.
XIAO HUA SUN, Appellant.

**COUNSEL**

Law Office of Robert S. Altagen, Robert S. Altagen and Hanwei Cheng for Appellant.

Law Offices of George L. Young and Steven L. Sugars for Respondent.

**OPINION**

**KITCHING, J.—**

## INTRODUCTION

The superior court entered a judgment nullifying the marriage of appellant Xiao Hua Sun and respondent Xia Guo on the ground that Sun was married to another woman when he purportedly married Guo. The court also denied Sun's claim that he was Guo's putative spouse pursuant to Family Code section 2251.[1] Sun appeals the order denying his putative spouse claim.

██ A party claiming to be a putative spouse must show, among other things, that he or she believed in good faith that the marriage was valid. A determination of good faith is tested by an objective standard. In this case, the superior court found that Sun did not have an objectively reasonable belief that he was married to Guo, and thus was not Guo's putative spouse.

There are two main issues on appeal. The first is whether there was substantial evidence supporting the superior court's finding that Sun did not

---

[1] Except as otherwise stated, all future statutory references are to the Family Code.

Section 2251, subdivision (a) provides: "If a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that the marriage was valid, the court shall: [¶] (1) Declare the party or parties to have the status of a putative spouse. [¶] (2) If the division of property is in issue, divide, in accordance with Division 7 (commencing with Section 2500), that property acquired during the union which would have been community property or quasi-community property if the union had not been void or voidable. This property is known as 'quasi-marital property'."

have a good faith belief that the marriage was valid. We shall conclude that there was substantial evidence to support that finding.

 The second issue is whether Sun can claim putative spouse status based on Guo's alleged good faith belief in the validity of the marriage, even though Sun did not have such a good faith belief. We hold that Sun is not a putative spouse under these circumstances. In so holding, we respectfully disagree with the holding in *In re Marriage of Tejeda* (2009) 179 Cal.App.4th 973 [102 Cal.Rptr.3d 361] (*Tejeda*).

The order denying Sun's claim for putative spouse status is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Sun and Guo met in North Korea in 1997 or 1998, began a romantic relationship, and shortly thereafter moved together to Los Angeles. Prior to the purported marriage between Sun and Guo, Guo knew that Sun was married to another woman in Italy.

In approximately January 2001, Sun met with his lawyer, Tonnie Cheng, and advised Cheng that he wanted to divorce his wife in Italy. Sun testified that although Guo was not present at his initial meeting with Cheng, shortly thereafter Guo met Cheng and worked with Cheng to arrange for Sun's divorce from his first wife. Guo testified that she did not meet Cheng until one or two years after Guo purportedly married Sun.

On February 14, 2001—Valentine's Day—Sun and Guo decided to marry, went to Las Vegas, and were married that day. Both Sun and Guo claim that at the time, they believed that Sun was already divorced from his Italian wife and that Sun and Guo were legally married. Guo's belief that Sun divorced his first wife prior to February 14, 2001, was based solely on Sun's representation to her that he had done so. Although both Sun and Guo knew that Sun was previously married, their marriage license stated that this was Sun's first marriage.

On February 15, 2001, Cheng filed on behalf of Sun a petition to dissolve Sun's marriage with his Italian wife. On August 21, 2001, the superior court entered a judgment dissolving Sun's first marriage.

On August 24, 2007, Guo filed a petition for dissolution of marriage. Guo filed an amended petition on January 7, 2008. In her amended petition, Guo sought to nullify her marriage with Sun on the ground that Sun entered into a bigamous marriage.

On August 15, 2008, the superior court entered a judgment of nullity. The court found that the marriage of Sun and Guo was illegal and void pursuant to section 2201[2] because Sun was married at the time he purportedly married Guo. This judgment determined the status of the marriage only, and did not adjudicate the division of the couple's assets.

After the judgment, Sun sought to be declared a putative spouse. The court held a two-day bench trial on the issue. On December 22, 2008, the court entered a memorandum of decision. In its memorandum, the court found that Sun did not have an objectively reasonable good faith belief that his prior marriage was dissolved prior to his purported marriage with Guo.

On February 17, 2009, the court entered an order denying Sun's request for a finding of putative spouse status. This appeal followed.

## CONTENTIONS

Sun does not challenge the judgment of annulment on appeal. Rather, he contends that the superior court erroneously denied his request to be declared a putative spouse. In particular, Sun contends that the superior court erroneously found that he did not have an objective good faith belief that a valid marriage existed.

Sun further contends that the superior court failed to consider Guo's good faith belief in the validity of the marriage in determining whether Sun was Guo's putative spouse. According to Sun, under section 2251, he is entitled to putative spouse status even if he did not have a good faith belief in the validity of the marriage, if Guo had such a belief.[3]

---

[2] Section 2201, subdivision (a) provides: "A subsequent marriage contracted by a person during the life of a former husband or wife of the person, with a person other than the former husband or wife, is illegal and void from the beginning, unless: [¶] (1) The former marriage has been dissolved or adjudged a nullity before the date of the subsequent marriage. [¶] (2) The former husband or wife (i) is absent, and not known to the person to be living for the period of five successive years immediately preceding the subsequent marriage, or (ii) is generally reputed or believed by the person to be dead at the time the subsequent marriage was contracted."

[3] Sun also argues that the trial court erroneously placed the burden on him to show that he had a good faith belief that his marriage to Guo was valid. This was error, according to Sun, because he and Guo "participated in the marriage ceremony, which creates the legal presumption that they both did so in good faith." However, Sun did not raise this argument in the trial court. He thus forfeited the claim of error on appeal. (*Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591–592 [86 Cal.Rptr.3d 784]; *People v. Saunders* (1993) 5 Cal.4th 580, 589–590 [20 Cal.Rptr.2d 638, 853 P.2d 1093].)

## DISCUSSION

### 1. *The Putative Spouse Doctrine*

■ The putative spouse doctrine is "an equitable doctrine first recognized by the judiciary, and later codified by the Legislature." (*In re Domestic Partnership of Ellis & Arriaga* (2008) 162 Cal.App.4th 1000, 1005 [76 Cal.Rptr.3d 401] (*Ellis & Arriaga*).) In 1943, our Supreme Court stated that "[i]t is well settled that a woman who lives with a man as his wife in the belief that a valid marriage exists, is entitled upon termination of their relationship to share in the property acquired by them during its existence." (*Vallera v. Vallera* (1943) 21 Cal.2d 681, 683 [134 P.2d 761].)

The doctrine, however, cannot be invoked unless the putative spouse had a *good faith* belief in the existence of a valid marriage. (*Vallera v. Vallera, supra*, 21 Cal.2d at p. 684.) "[I]n the majority of cases, the de facto wife attempted to meet the requisites of a valid marriage, and the marriage proved invalid only because of some essential fact of which she was unaware, such as the earlier undissolved marriage of one of the parties [citations], a consanguineous relation between the parties [citations], or the failure to meet the requirement of solemnization. [Citations.]" (*Ibid.*)

The purpose of the doctrine is to protect the "innocent" party or parties of an invalid marriage from losing community property rights. (See *Schneider v. Schneider* (1920) 183 Cal. 335, 337, 340 [191 P. 533].) As our Supreme Court explained in *Schneider v. Schneider*, "the common-law rule as to the consequences of a void marriage upon the mutual property rights of the parties to it is inapplicable where the community property regime prevails. This conclusion is dictated by simple justice, for where persons domiciled in such a jurisdiction, believing themselves to be lawfully married to each other, acquire property as the result of their joint efforts, they have impliedly adopted . . . the rule of an equal division of their acquisitions, and the expectation of such a division should not be defeated in the case of innocent persons." (*Id.* at pp. 339–340.)

In 1969, the Legislature codified the putative spouse doctrine in Civil Code former section 4452 as part of the Family Law Act. (*Ellis & Arriaga, supra*, 162 Cal.App.4th at p. 1005.) Civil Code former section 4452 "used language almost identical to that in Family Code section 2251, subdivision (a), which contains the current version of the putative spouse doctrine and provides in relevant part: 'If a determination is made that a marriage is void or voidable and the court finds that either party or both parties believed in good faith that

the marriage was valid, the court shall: [¶] (1) Declare the party or parties to have the status of a putative spouse.' " (*Ellis & Arriaga*, at p. 1005.)

"Prior to the enactment of the Family Law Act, no statute granted rights to a putative spouse. The courts accordingly fashioned a variety of remedies by judicial decision." (*Marvin v. Marvin* (1976) 18 Cal.3d 660, 677 [134 Cal.Rptr. 815, 557 P.2d 106], fn. omitted.) Some decisions, as we explained in our discussion *ante*, "affirmed the power of a court to employ equitable principles to achieve a fair division of property acquired during putative marriage." (*Id.* at p. 678.)

The codification of the putative spouse doctrine was not intended to make substantive changes to the case law before the enactment of the Family Law Act in 1969. (*In re Marriage of Monti* (1982) 135 Cal.App.3d 50, 54–55 [185 Cal.Rptr. 72] (*Monti*); *In re Marriage of Vryonis* (1988) 202 Cal.App.3d 712, 719 [248 Cal.Rptr. 807] (*Vryonis*).) "Instead, the Legislature contemplated the continued protection of *innocent* parties who believe they were validly married." (*Vryonis*, at p. 719, italics added.)

■ After the codification of the doctrine, this court held that the term "good faith" in the putative spouse statute meant an objective good faith, and not merely a subjective good faith. (*Vryonis, supra,* 202 Cal.App.3d at p. 720.) Other courts which have considered the issue have come to the same conclusion. (*Estate of DePasse* (2002) 97 Cal.App.4th 92, 107–108 [118 Cal.Rptr.2d 143]; *In re Marriage of Ramirez* (2008) 165 Cal.App.4th 751, 756 [81 Cal.Rptr.3d 180]; *Welch v. State of California* (2000) 83 Cal.App.4th 1374, 1378 [100 Cal.Rptr.2d 430].)

2. *There Was Substantial Evidence Supporting the Superior Court's Finding That Sun Was Not Guo's Putative Spouse*

We review a finding that a party is a putative spouse under the substantial evidence standard of review. (See *In re Marriage of Ramirez, supra,* 165 Cal.App.4th at p. 756.) " ' "When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citations.] [¶] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court." ' " (*Spencer v. Marshall* (2008) 168 Cal.App.4th 783, 792–793 [85 Cal.Rptr.3d 752].)

In its memorandum of decision, the superior court gave three reasons why it found that Sun did not have an objectively reasonable good faith belief that his prior marriage was dissolved before marrying Guo. First, Sun "signed the marriage license which required him to note how many prior marriages he had, and he said his impending marriage to [Guo] was his first marriage." The trial court was entitled to make a reasonable inference that, because he knew that his marriage with his Italian wife was not dissolved, Sun falsely stated he did not have any prior marriages.

Second, the trial court noted that Sun's petition to dissolve his marriage with his Italian wife was filed the day after he purportedly married Guo, not one month earlier, when he visited Attorney Cheng's office. This fact undermines Sun's position because the superior court could reasonably infer that Sun was aware of his attorney's actions on his behalf. In light of the timing of the petition to divorce his Italian wife, it was obvious to a reasonable person in Sun's shoes that he was still married to his Italian wife on the date of his purported marriage to Guo.

Finally, the court stated that even if Sun's petition to divorce his Italian wife had been filed one month earlier, Sun "presented no evidence to show that he had a good faith belief that the finalization of that dissolution would occur within one month." A reasonable person would know that an attorney cannot by herself grant her client a divorce decree, that obtaining a divorce decree requires filing papers in court, and that the client will be notified if the attorney obtains such a decree from a court. At a bare minimum, a reasonable person in Sun's shoes would have inquired on or before February 14, 2001, whether his divorce to his Italian wife was final.

When Sun purportedly married Guo, either (1) he was willfully ignorant of the status of the proceedings to divorce his Italian wife or (2) he actually contacted his attorney about the matter, in which case he would have been informed that a petition for dissolution had not yet been filed. The fact that the petition was filed *the day after* he ostensibly married Guo suggests that he had a conversation with Attorney Cheng immediately before or after the Las Vegas marriage. In either case—whether Sun was willfully ignorant of his marital status or he was actually informed that he was still married to his Italian wife—there was substantial evidence to support the trial court's conclusion that Sun did not have an objectively reasonable good faith belief that he was single when he purportedly married Guo.

### 3. *Whether Guo in Good Faith Believed in the Validity of the Marriage Is Irrelevant to Sun's Claim for Putative Spouse Status*

Sun contends that the superior court erroneously failed to consider whether Guo had a good faith belief that the marriage was valid.[4] As stated, section 2251, subdivision (a) provides that "[i]f a determination is made that a marriage is void or voidable and the court finds that *either* party or both parties believed in good faith that the marriage was valid, the court shall: [¶] (1) Declare the party or parties to have the status of a putative spouse." (Italics added.) Sun argues that the word "either" indicates that he is entitled to putative spouse status if either he or Guo had a good faith belief in the validity of the marriage. In other words, according to Sun, if either party has a good faith belief in the marriage, there is a "putative marriage," and thus a party who does not have a good faith belief in the marriage can claim to be a putative spouse even where, as here, the other party does not claim to be a putative spouse. We reject this argument.

"In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute. [Citation.] We begin with the language of the statute, giving the words their usual and ordinary meaning. [Citation.] The language must be construed 'in the context of the statute as a whole and the overall statutory scheme, and we give "significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [45 Cal.Rptr.3d 394, 137 P.3d 218].)

Here, the language of section 2251, subdivision (a)(1), undermines Sun's position. The statute permits the court to declare that "the party or parties" have the status of a putative spouse. Under Sun's interpretation of the statute, the word "party" is superfluous because both spouses are putative spouses in a putative marriage if either party has, or both parties have, a good faith belief in the marriage. The words "the party or parties," however, have meaning if they refer to the party or parties *who believed in good faith the marriage was valid.* By giving the court the option of declaring one or both parties to be a putative spouse, the Legislature retained the common law rule that only an innocent party can seek to be a putative spouse.

In addition, Sun's interpretation of section 2251 would not further the purpose of the statute. As stated, the statute is based on equitable principles

---

[4] Sun argues that Guo is estopped from denying Sun's putative spouse status because she continuously believed that the marriage was valid and acted in a manner consistent with being married to Sun. However, Sun did not make this argument in the superior court, and thus forfeited the claim of error on appeal. (*Perez v. Grajales, supra,* 169 Cal.App.4th at pp. 591–592; *People v. Saunders, supra,* 5 Cal.4th at pp. 589–590.)

and is meant to protect an *innocent* party who in good faith believed a marriage was valid. Hence, if Guo in good faith believed that the marriage was valid—as Sun contends—then the statute is meant to protect her. But she does not seek the statute's protection. Thus whether Guo had a good faith belief in the validity of the marriage is irrelevant to Sun's putative spouse claim.[5]

In *Tejeda*, the court interpreted section 2251 differently. It concluded that section 2251 must be applied "without regard to guilt or innocence, when the court makes the predicate findings that (1) the marriage is void or voidable, and (2) at least one party to the union maintained a good faith belief in the validity of the marriage." (*Tejeda, supra,* 179 Cal.App.4th at p. 985.) In reaching this conclusion, the court correctly noted that section 2251's predecessor statute, Civil Code former section 4452, was part of the Family Law Act. (*Tejeda,* at pp. 980, 984.) The court further correctly noted that " '[t]he main focus of the act was to eliminate the artificial fault standard.' " (*Id.* at p. 984, quoting *Monti, supra,* 135 Cal.App.3d at p. 54; accord, 4 Assem. J. (1969 Reg. Sess.) pp. 8054, 8056–8057.)

The Family Law Act, however, was a comprehensive revision of California marital laws (*In re Marriage of Banks* (1974) 42 Cal.App.3d 631, 635 [117 Cal.Rptr. 37]), which included diverse areas of family law. (See Civ. Code, former §§ 4000–5138.) Many sections of the act, most notably those sections pertaining to the dissolution of marriage (Civ. Code, former § 4500 et seq.), included substantial, fundamental changes to the law. Other parts of the act, however, did not. Of relevance here, the sections relating to void marriage, including the predecessor to Family Code section 2251—Civil Code, former section 4452—were largely declaratory of existing law and were *"not intended to work significant substantive changes."* (*Monti, supra,* 135 Cal.App.3d at p. 55, quoting 4 Assem. J., *supra,* at p. 8060; accord, *Vryonis, supra,* 202 Cal.App.3d at p. 719.)

Hence, contrary to the view expressed in *Tejeda,* the purpose of the putative spouse statute was *not* different than the equitable purpose of the putative spouse doctrine created by the courts. (See Luther & Luther, *Support and Property Rights of the Putative Spouse* (1973) 24 Hastings L.J. 311, 327 [Civ. Code, former §§ 4452 and 4455 appear to have accomplished the intent of the Governor's Commission on the Family—" 'to award support to an innocent spouse who has lived with another person in good faith for a number of years, only to find that the marriage was void' "].) The courts thus

---

[5] We do not express an opinion about whether Sun could have asserted a claim for quasi-marital property if Guo successfully claimed to be a putative spouse.

have continued to refer to "innocent" parties when discussing putative spouses *after* enactment of the Family Law Act. (*In re Marriage of Ramirez, supra,* 165 Cal.App.4th at p. 756; *Estate of DePasse, supra,* 97 Cal.App.4th at p. 107; *Velez v. Smith* (2006) 142 Cal.App.4th 1154, 1172 [48 Cal.Rptr.3d 642]; *Elden v. Sheldon* (1988) 46 Cal.3d 267, 275 [250 Cal.Rptr. 254, 758 P.2d 582]; *Estate of Hafner* (1986) 184 Cal.App.3d 1371, 1376–1377 [229 Cal.Rptr. 676]; *In re Marriage of Recknor* (1982) 138 Cal.App.3d 539, 544 [187 Cal.Rptr. 887]; *Nieto v. City of Los Angeles* (1982) 138 Cal.App.3d 464, 471 [188 Cal.Rptr. 31]; *Estate of Vargas* (1974) 36 Cal.App.3d 714, 717 [111 Cal.Rptr. 779].)

The *Tejeda* court's reliance on *Estate of Leslie* (1984) 37 Cal.3d 186 [207 Cal.Rptr. 561, 689 P.2d 133] is unpersuasive. In *Estate of Leslie*, the court held that a man who had a good faith belief in the validity of a marriage was a putative spouse, and thus was entitled to succeed to a share of his putative wife's separate property under the Probate Code. (*Estate of Leslie*, at pp. 190, 197.) In other words, the court permitted an *innocent* spouse to assert a putative spouse claim. Here, by contrast, Sun is not an innocent party. *Estate of Leslie* is thus distinguishable from this case.

The *Estate of Leslie* court did *not* hold that a party lacking a good faith belief in the validity of the marriage can assert a putative spouse claim. Indeed, apart from *Tejeda*, Sun does not cite, and we are unable to find, any case in California that so holds.[6]

Having determined that the purpose of section 2251 is to protect innocent parties of an invalid marriage from losing community property rights, we disagree with the holding in *Tejeda*. If *Tejeda* were correct, then a party who fraudulently and in bad faith conceals his or her bigamy can reap the benefits of putative spouse status even when his or her innocent spouse does not contend that there was a putative marriage. This result is inconsistent with the equitable principles underlying section 2251. We thus hold that a party who seeks to be a putative spouse must have an objective good faith belief in the validity of the marriage.

---

[6] In addition to the purported change in the purpose of section 2251, the *Tejeda* court gave other reasons to support its holding. For example, the court opined that two related statutes, sections 2254 and 2255, included provisions that differentiated between "guilty" and "innocent" parties. (*Tejeda, supra,* 179 Cal.App.4th at p. 984.) The absence of such a provision in section 2251, the court reasoned, leads to the inference that the statute allows a party to become a putative spouse even though he or she did *not* have a good faith belief in the validity of the marriage. (179 Cal.App.4th at p. 984; contra, Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2010) ¶ 19:62, pp. 19-22 to 19-23 (rev. # 1, 2010) [discussing §§ 2254 and 2255].) In light of the language and purpose of section 2251, we find the *Tejeda* court's analysis unpersuasive.

## DISPOSITION

The superior court order dated February 17, 2009, denying appellant Sun's request to be declared a putative spouse is affirmed. Respondent Guo is awarded costs on appeal.

Klein, P. J., and Aldrich, J., concurred.