Filed 7/19/13  Marriage of Brown CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Marriage of JOAN M. and DONALD V. BROWN JR. | B235887 |
| | (Los Angeles County Super. Ct. No. ED039259) |
| JOAN M. BROWN, | |
| Appellant, | |
| v. | |
| DONALD V. BROWN JR., | |
| Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. J. Carlton Seaver, Judge.  Reversed and remanded with directions.

Joan M. Brown, in pro. per., for Appellant.

No appearance for Respondent.

_____

In a marital dissolution, a former spouse challenges the judgment following a trial on reserved issues. Some of the court's orders are supported by substantial evidence; however, two of its rulings regarding (1) the value of a Harley-Davidson motorcycle, and (2) the division of the parties' knife collection are not supported by the evidence. We reverse the judgment and remand for further proceedings.

## FACTS

In February 2008, Joan Brown petitioned to dissolve her 32-year marriage to Donald Brown, Jr. They have no children. Donald responded to the petition in September 2008. A trial was sought on the issues of spousal support and the division of property.

Joan submitted an income and expense declaration to the court in January 2009. She declared that she is a 54-year-old cosmetologist who last worked in 1995. She lives on $550 in government benefits, less a Medicare payment of $96. She has savings of $100 and property worth $300,000. Her monthly expenses (including mortgage and food) are $2,232. Joan estimated that Donald's monthly income is $1,415.

Joan and Donald continued to live in the family home, which was for sale at a reduced price due to its deteriorated condition and the accumulation of garbage, car parts and junk that Donald collected over the years. Donald refused to pay any of the expenses associated with the home, despite living in it. Joan was forced to sell community and separate property to cover living expenses.

The parties' home sold in February 2009 for $186,416. Donald refused to vacate the residence or remove his belongings after escrow closed. Further, Donald refused to make court-ordered monthly spousal support payments. Donald received monthly Social Security ($1,598) and worker's compensation ($607), for a total of $2,205.

Joan filed an updated income and expense declaration showing that her income has not changed, but she received money from the sale of the family residence. Her monthly expenses had increased to $3,446, almost half of which was rent for the family residence: Joan promised the buyers of the property that she would stay and clean up the

2

debris littering it. Joan worked hard to clean the property and was obliged to hire laborers, at a cost of over $5,000, because Donald did not assist her.

Joan submitted a trial brief and exhibits listing community property such as furniture, appliances, knives and cars. She asked the court to order an appraisal for various collectibles, such as books, magazines, model cars, Zippo lighters, comic books, and so on. She requested half of Donald's pension. In response, Donald stated that he "is legally blind, and neither party is capable of gainful employment."

On May 4, 2009, the court ordered the parties to list for sale three classic cars; to either sell their guns and split the proceeds or purchase them; to divide the knives among themselves; and to divide the pension. Donald was ordered to pay spousal support of $575 per month for one year and $478 per month thereafter.

Joan paid to advertise the three classic cars, but Donald refused to allow interested parties to look at the vehicles. Joan claimed that Donald possessed all of the parts needed to complete work on a 1947 Ford, and that he refused to meet to divide up the knives. Joan asked the court for help in carrying out its order, or allow Donald to keep the disputed property and give her an equalizing payment. For his part, Donald requested a reduction in spousal support because he no longer receives worker's compensation. In December 2009, the court reduced Donald's support obligation to $364 per month.

In January 2010, Joan returned to court to complain that Donald still refused to comply with the court's order and divide the community property or sell the classic cars. In February 2010, the court directed the parties to sell the cars within 20 days, and to simply divide up the boxes containing the knives without viewing their contents. The court vacated its order reducing spousal support. Joan accepted offers for the cars, but Donald refused to sign the titles to transfer ownership. On March 24, 2010, the court granted Joan's ex parte request and directed Donald to sign the titles within 48 hours; if not, the court clerk was authorized to sign on Donald's behalf.

In May 2010, Donald petitioned for a division of property. In particular, Donald declared that Joan sold firearms and ammunition worth over $14,000, and he sought reimbursement for half that amount, and half the proceeds from the sale of a motorcycle

3

and other items. The division of the knives had not been resolved: Donald claimed that Joan took all of the most valuable knives and left him 105 inexpensive knives out of 357 knives in a collection worth $15,000.

The court entered a judgment of dissolution on March 14, 2011. Shortly afterward, Joan's attorney asked to be relieved as her counsel. Joan objected, saying that the only reason her attorney has not been paid is because he failed to ensure her receipt of court-ordered spousal support. As a result, Joan was forced to live on $551 per month from Social Security. Though trial was a month away, the court relieved Joan's counsel from the case.

Joan (age 56) and Donald (age 65) appeared for trial in propria persona in August 2011. Both parties requested spousal support. Joan and Donald are disabled: they rely upon Social Security disability income (SSDI) of $551 (Joan) and $1,500 (Donald). They divided the proceeds from the sale of their house equally: each received between $45,000 and $50,000, after costs. They have spent the sale proceeds, and have no stocks, bonds or retirement accounts.

Donald has not worked since his employer went out of business in 1996. Before his layoff, he was earning about $50,000 annually. He testified that he does not receive a company pension. Donald admitted that he has not been paying court-ordered spousal support to Joan because he spends all of his $1,500 SSDI. Joan received a worker's compensation settlements decades ago that she used to purchase "stuff in the house" and a motorcycle for Donald.

Joan questioned Donald about their cars. He denied removing car parts from their home, saying "I shared everything with you." The parties purchased a 1947 Ford Tudor during their marriage. During the divorce, Joan paid Donald $3,500 for his one-half interest in the Tudor. Joan asserted that Donald "stripped the parts off of it" and sold them after she paid him for the car. She described the vehicle as "a chassis with wheels on it that you can roll around." The car without the parts is worth $1,000, at best. Joan listed specific missing car parts, such as hood hinges, hubcaps, an extra hood, an extra

4

oval window for the back, and window regulators that are not available for purchase elsewhere. Joan wanted Donald to buy the Tudor back from her.

Joan made videotapes of Donald allegedly taking the car parts. She presented a written transcript with her narrative. The transcript was admitted into evidence, along with photos of the derelict Tudor. Donald informed the court that the "stolen" parts can be seen in the photos that Joan took, saying "Everything appears to be here, your Honor." Joan countered that the photos showed only one car hood (unlike the two in the video) and missing spare fenders, as well as the motor and transmission. The court admitted into evidence a declaration from a man from Australia, who purchased the Browns' 1929 Ford Roadster. He declared that he examined the 1947 Tudor at the home of the automobile restorer, who showed him various spare parts and stated that Donald had the engine and transmission.

Donald estimated that the value of the Tudor is $4,000. He has not seen the car for 15 years because someone else was rebuilding it. He stated that "everything that went to that car was put in the back seat. The back seat area was full of parts." He denied selling any parts, except for "two little tiny chrome strips" that he purchased for $10 and gave away four or five years ago, during the marriage. He firmly denied giving boxes of car parts to someone named Mr. Money.

The parties had tons of car and motorcycle parts arrayed around their now-sold property, to the point that Joan described it as a "junkyard." Only 1 percent of those parts belonged to the Tudor: nearly all of the Tudor parts were with the automobile rebuilder. When the parties separated and prepared to sell the house, Donald sold the car parts and gave Joan half of the proceeds over the course of six months. He assigned a minimal value to them.

The parties owned a 1929 Ford Roadster they had purchased in 1980: Joan paid Donald $5,000 for his one-half interest in the Roadster and sold it for $10,000. The parties owned a 1966 El Camino, purchased in 1986: Joan paid Donald $1,000 for his one-half interest in the El Camino and sold it for $2,000. Donald refused to sign the pink

slips to transfer the vehicles, and Joan incurred legal fees because her lawyer had to make multiple court appearances to compel Donald to sign off on the transfers.

The parties acquired 23 firearms during marriage. Donald estimated their value at around $15,000. Joan sold most of the firearms on consignment in 2007, and used the proceeds for living expenses. Three guns were taken to the police department because they included an illegal sawed-off shotgun and MAK-90. The remaining weapons were two black powder rifles and a Japanese sniper gun.

Donald testified that Joan packaged their knife collection and he received three boxes from his attorney. The knife collection contained 364 knives and he received only 92, some of which are inexpensive novelty pieces. Joan sold her knives for $2,200.

Joan purchased a Harley-Davidson motorcycle for Donald in 1983 for $4,000, with money she received as worker's compensation. Unlike cars, motorcycles increase in value over time; however, Joan described it as being "in rotten condition" because it was improperly stored. Joan testified that she sold the motorcycle in 2009 for $3,500. Moments later, she corrected herself after looking at a bill of sale and stated that the price was $3,000.

The parties had a collection of eight Zippo lighters that each cost over $45 and came in decorative boxes. They have appreciated in value. Donald last saw them in a room of the family residence that was being packed by two movers and videotaped by Joan. Donald said he had "no clue" where they are. The court asked Joan point-blank, "Where are the Marjorie Petty [Zippo] lighters?" Joan answered, "I have no idea which ones were which. I never even looked at all of them." She was vague about their number and location.

Donald asked the court to terminate his spousal support obligation because "I'm financially strapped. I have no money." When the court pointed out that Joan is "more strapped than you," Donald replied, "No comment." The court found that the parties had a low standard of living and indicated that it was going to award spousal support to Joan, who has no marketable skills. Both parties are disabled and have not worked for some time. Donald is almost legally blind.

## THE TRIAL COURT'S JUDGMENT

The trial court issued a judgment on reserved issues on August 12, 2011. It ordered Donald to pay Joan monthly spousal support of $300. With respect to disputed property: (1) the court rejected Donald's claim that the order to sell the three automobiles was unfair; (2) any funds Joan received as worker's compensation in the 1970's were used to purchase community property (such as a motorcycle and furniture), and the property had to be equally divided; (3) most of the couple's firearms were sold before they separated and the funds were used for community purposes, but the three remaining guns were awarded to Donald; (4) the parties failed to comply with the court's order to divide the knives equally, and Donald received only 72 of the 364 knives. The court found the fair market value to be $2,742, and Donald is entitled to knives worth $829 or to cash in that amount; (5) the court found that neither party is obligated to the other for jewelry taken from a safe; (6) there is insufficient evidence to support a finding that Joan is obligated to Donald for a missing dashboard; (7) Donald must deliver certain plates and VCR tapes to Joan, and Joan must deliver the Zippo lighters to Donald; and (8) Joan must make an equalizing payment of $2,579 to Donald. Joan appeals from the judgment.

## DISCUSSION

### 1. Appeal and Review

Joan filed a timely appeal from a judgment after trial. An appeal may be taken from an orders directing the performance of an act, the payment of money, or awarding spousal support. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368-369.) The judgment is reviewed under a substantial evidence standard. "'"'"When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [ ] When two or more inferences can reasonably be deducted from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.'"'"' (*In re Marriage of Guo & Sun* (2010) 186 Cal.App.4th 1491, 1497.)

7

## 2. **Personal Property**

### a. *Automobile Parts*

Testimony was received about the parties' three classic cars. The judgment states, "The Court previously ordered that Respondent sell to Petitioner three automobiles . . . . Respondent argues that the order was unfair, that it did not recognize the significant value of the vehicles and the spare parts associated with those vehicles accumulated over the years, and that . . . the spirit of the order was not fully complied with. Notwithstanding those claims, the Court finds no reason to vacate or modify its prior order. The Court orders Respondent to sign any pink slips conveying the vehicles to Petitioner on presentation by Petitioner to the extent Respondent has not done so already."

Donald testified that he never took any parts to the 1947 Tudor except for two tiny chrome strips that he purchased for $10. He denied giving boxes of car parts to a third party and maintained that "everything that went to the car was put in the back seat." Joan accuses Donald of lying. She videotaped Donald while he was clearing out the attic and claims that among the detritus were 1947 Ford parts such as a speedometer and cables. Assuming that the parts belonged to the Tudor, there is no admissible evidence showing what happened to those parts after they were removed from the house.

We do not reweigh the credibility of witnesses on appeal. The trial court chose to believe Donald's testimony that all of the Tudor parts were with the car. Conversely, the court disbelieved Joan's speculation that the parts were transferred to "Mr. Money." The declaration from the Australian gentleman has no probative value as it is pure hearsay. Substantial evidence supports the trial court's order.

### b. *Knives*

Donald testified at trial that he received 92 of 364 knives in the parties' collection. In a declaration filed in May 2010, Donald stated that he received 105 knives out of 357 in the collection. In both instances Donald complained that his part was largely comprised of cheap novelty items. Neither Donald's testimony at trial nor his 2010 declaration supports the trial court's finding that Donald received only 72 knives. As a result, the court's calculation that Donald is entitled to either the missing knives or cash

from Joan of $829 is unsupported by the record. The trial court must revisit the division of the knives on remand.

### c. *Motorcycle*

Joan initially testified that she sold the Harley-Davidson motorcycle for $3,500. Moments later, she told the court that she had the bill of sale in her hands and the receipt showed a sale price of $3,000. The court replied, "Got it. Okay. Thank you." The order lists a sale price of $3,500 and Joan was ordered to pay Donald one-half of that. It is unclear whether the court simply failed to note the correction or had some other reason for selecting the higher figure. The price of the motorcycle must be resolved on remand.

### d. *Zippo Lighters*

Donald testified that he had "no clue" where his Zippo lighters are located, and Joan was evasive when the court asked her where they were. As a result, the court directed Joan to return the Zippo lighters to Donald. The video showing some person in the house packing the lighters is meaningless: it does not tell the trial court or this court where the box containing the lighters ended up. Joan now claims that Donald wrongly accused her of taking the lighters. At trial, Joan did not assert that Donald was in possession of the lighters. The trial court chose to credit Donald's testimony that he did not have the lighters, and discredited Joan's evasive answer. The court's order directing Joan to return the lighters to Donald is supported by substantial evidence.

## 3. **Pension Plan**

At trial, Joan did not present any evidence showing that Donald receives a company pension. The trial court only had Donald's uncontradicted testimony that he receives no private pension money. On appeal, Joan argues that Donald "blatantly lied." She now attempts to submit new evidence in the form of a letter dated February 21, 2012, regarding Donald's pension.

We cannot consider on appeal any material that was not presented to the trial court. Clearly, a letter dated six months after the trial and judgment was not before the

9

trial court and is not part of the record on appeal.[1]  There is no basis in the present record on appeal for finding that Donald receives a pension that Joan is entitled to share.  On remand, Joan may present the trial court with evidence that Donald failed to disclose a source of income and ask the trial court to enter a Qualified Domestic Relations Order (QDRO) directing payment of half of Donald's pension to Joan.

**4.  Social Security Benefits**

Joan makes an indecipherable argument about Donald's Social Security being subject to spousal support.  The trial court did, in fact, direct Donald to pay Joan $300 per month in support from his SSDI benefits, inasmuch as this is the only income that Donald testified he receives.  As stated in section 3, *ante*, the trial court can consider on remand the existence of a pension from Donald's employer (if any), and Donald's spousal support arrearages in connection with any equalizing payment it ordered Joan to make.[2]

---

[1]  We deny Joan's request to augment the record with extraneous material that was not presented to the trial court.  Only the properly marked trial exhibits lodged with this court were considered.

[2]  Joan should contact the Social Security Administration to discuss her right to receive Social Security retirement benefits based on her status as Donald's wife for 32 years.

10

## DISPOSITION

The judgment is reversed and the case is remanded for the trial court to rule anew on the issues of the division of the knives and the price of the motorcycle. On remand the trial court may consider new evidence, if any, that Donald receives a pension from his former employee that he failed to disclose at trial, and Joan's interest in the pension. In all other respects, the judgment is affirmed. Respondent to bear costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


FERNS, J.*

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.