Filed 10/4/13  Marriage of DiMarco CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Marriage of DEBORAH and FRANK DiMARCO. | B235405 <br><br> (Los Angeles County <br> Super. Ct. No. BD453017) |
| DEBORAH SINGER, <br><br>     Respondent, <br><br>     v. <br><br> FRANK DiMARCO, <br><br>     Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Steff Padilla, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.).  Affirmed.

Murray S. Berns; David M. Shirwo for Appellant.

Law Offices of Majorie G. Fuller, Marjorie G. Fuller; Dennis E. Braun for Respondent.

_____

Frank DiMarco appeals from the judgment in this marital dissolution case. There is no basis for reversal. We affirm.

## BACKGROUND

The record includes numerous transcripts, yet DiMarco's opening brief contains no "summary of the significant facts," a mandatory element. (Cal. Rules of Court, rule 8.204(a)(2)(C)); *Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 869.) Appellant's "burden to provide a fair summary of the evidence 'grows with the complexity of the record.'" (*Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.) His "Statement of the Case" cites only the judgment; he then moves directly to the "Argument." The brief is replete with unprofessional sarcasm and ad hominem attacks on the trial judge.

Appellant's opening brief is, in a word, inadequate. As this Court has said in the past, "The appellate court starts with the presumption that the evidence sustains each finding of fact [citations], and the burden rests upon appellant 'to demonstrate that there is no substantial evidence to support the challenged findings.' [Citations.] To this end appellant must set forth in his brief *all material evidence upon the point*, not merely his own proofs [citations]; if this is not done the point is deemed waived . . . . Counsel in this case has made no real effort to comply with the rule. '[A] claim of insufficiency of the evidence to justify findings, consisting of mere assertion without a fair statement of the evidence, is entitled to no consideration, when it is apparent, as it is here, that a substantial amount of evidence was received on behalf of the respondents.' [Citation.] In the circumstances we are entitled to accept the statements of respondent's brief as to the evidence upon the subject." (*Davis v. Lucas* (1960) 180 Cal.App.2d 407, 409-410, italics added; *Guardianship of Turk* (1961) 194 Cal.App.2d 736, 738.)

## PROCEDURAL HISTORY

According to respondent, the parties were married for two years and have one child. Respondent filed for dissolution in September 2006. Some 21 court proceedings were conducted to resolve child support, visitation, domestic violence, spousal support, drug testing, and property division. Trial began in February 2009 and continued

2

intermittently until September 2010. During trial, appellant was jailed in July 2009 for an altercation that occurred at the office of the child's therapist. In June 2010, appellant was sentenced to a year in jail for violating court orders.[1]

## THE TRIAL COURT'S JUDGMENT

In a judgment entered on June 28, 2011, the trial court made numerous findings. The parties were married from September 2004 to September 2006. Their child, Sienna was born in January 2006. Frank willfully violated criminal court and family court orders and engaged in acts of domestic violence toward Deborah and Sienna. He "cannot control his behavior" and lacks insight. During trial, Frank was incarcerated multiple times. He has "a serious drinking problem" and poses a risk to his daughter. Frank's testimony was "inconclusive or fantastical" and "lacked credibility." Sienna is at risk of abduction.

In light of Frank's history of child abuse and spousal abuse, the court awarded Deborah sole legal and physical custody of Sienna. Frank may have monitored visitation with Sienna, on condition that he complete a therapeutic counseling regimen to address domestic violence, alcohol abuse, anger management and impulse control issues; complete a parenting class; participate in Alcoholics Anonymous sessions; undergo random testing for alcohol and controlled substances; and comply with all criminal court orders and terms of probation.

With respect to child support, the court found that Deborah has been Sienna's sole provider since the marital dissolution petition was filed. The court ordered Frank to pay $200 per month in child support. As to spousal support, the court found that "this is a short-term marriage that was marred by domestic violence, which commenced prior to the filing of the [petition], and continued through the Trial of this case." The marital

---

[1]     We take judicial notice of a criminal opinion stating that appellant pleaded no contest in February 2011 to committing grand theft of respondent's personal property by stealing $49,888 from her bank account in 2008-2009. (*People v. DiMarco* (Jan. 30, 2013, B237500) [nonpub. opn.].)

standard of living improved during the marriage, owing to Deborah's separate property. Frank continued to live above his means despite business setbacks arising from mismanagement and fraudulent business practices. Each party is capable of employment. Deborah used her income and separate property to support herself and Sienna while Frank refused to work, saddled Deborah with all of the community debt, and fraudulently misappropriated Deborah's separate property for his personal use. The court terminated its jurisdiction on the issue of spousal support, declaring that neither party may seek support from the other.

The court awarded Deborah real property in Calabasas that was her separate property, as well as all improvements to that property. The court noted that Deborah traced the improvements to her separate property, which Frank failed to rebut. Instead, Frank attempted to claim a gambling debt as an improvement to the property. The court also awarded Deborah the assets from a 2005 trust.

Frank operated a construction business prior to and during the marriage. He forged Deborah's name on a fictitious business statement to make it appear as if she owned and operated the construction business, when she had nothing to do with it. The court determined that Deborah paid $132,000 in taxes owed by Frank's separate business operation. Frank ignored a court order to turn over a refund he received during trial; all but $17,000 of the refund was seized by tax authorities for years prior to marriage, when Frank failed to pay taxes. The court ordered Frank to repay Deborah $132,000.

Deborah paid Frank temporary support of $43,938, subject to reallocation and adjustment by the court. Because Frank is the perpetrator of domestic violence and Deborah is the victim, the court ordered Frank to reimburse Deborah the full amount of temporary support she paid to him. Further, Frank wrongfully converted money from Deborah's trust during the trial, in the amount of $45,820. The court ordered Frank to reimburse all of Deborah's losses arising from the conversion.

Finally, the court found that Deborah was required to defend herself from a fraudulent business transaction that Frank committed prior to marriage, causing Deborah to incur attorney fees in the amount of $876,000: the court ordered Frank to reimburse

4

Deborah these attorney fees. In addition, Deborah paid for Frank's attorney fees in this dissolution action, and Frank's conduct caused unnecessary litigation because Frank failed to follow court orders and engaged in domestic violence. The court ordered Frank to reimburse Deborah the $35,000 in attorney fees she paid on his behalf.

## DISCUSSION

### 1. Appeal and Review

Frank timely appeals from the judgment.[2] Appeal may be taken from an order directing the performance of an act, or the payment of money or spousal support. (*In re Marriage of Skelley* (1976) 18 Cal.3d 365, 368-369.) The judgment is reviewed under a substantial evidence standard. """"When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [ ] When two or more inferences can reasonably be deducted from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.'""" (*In re Marriage of Guo & Sun* (2010) 186 Cal.App.4th 1491, 1497.) Custody and visitation orders are reviewed under a deferential abuse of discretion standard, to see whether the court advanced the best interest of the child. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32.)

### 2. Reimbursement for Separate Property Contributions

Appellant contends that he contributed $291,605.72 of his separate property to pay for improvements to real property owned by respondent. Appellant was not on title to the property. With respect to the property in Calabasas, respondent offered the testimony of an expert, Pamela Wax-Semus, a certified fraud examiner who has worked on "hundreds" of family law cases. She conducted an exhaustive method tracing of community and

---

[2] Frank's notice of appeal challenges 45 court orders dating from January 2007, in addition to the June 2011 judgment. Even assuming that there is jurisdiction to review prior orders (Code Civ. Proc., § 906), appellant's brief does not address any of the prejudgment orders listed in the notice of appeal; therefore, they are forfeited.

separate property, identifying $303,854.71 in improvements of which $303,105.72 came from respondent's separate property.

Appellant testified that he is a licensed general contractor and performed work on the residence, paid for by Spar & Associates (Spar), his company. Relying on checks that were not produced during discovery, appellant calculated that Spar paid $171,638.23 for improvements to the Calabasas home in 2005, and $79,967.49 in 2006. Appellant stated that the draw he took from Spar was paid into a joint account with respondent and he believed that the money was used on the Calabasas property.[3]

The court found that appellant "failed to rebut [respondent's] tracing and proof of separate property improvement to the real property. [Appellant] attempted to claim gambling debt as improvement to the real property [ ] and was not credible in his testimony of his contribution to improvement and reimbursement to him." As the trier of fact, the court was entitled to believe the tracing testimony of the expert witness and to disbelieve appellant's testimony. We do not reassess witness credibility on appeal: "The trier of fact is the *exclusive* judge of the credibility of the witnesses. [Citations.] The trial court is free to disbelieve and reject the testimony of witnesses even though they are uncontradicted and unimpeached." (*Maslow v. Maslow* (1953) 117 Cal.App.2d 237, 243.) The court's determination that respondent paid for improvements to the property—and appellant did not—is supported by substantial evidence.

## 3. Reimbursement of Legal Fees

The trial court ordered appellant to reimburse respondent $876,000 for legal fees she incurred "to defend herself from the lawsuit that [appellant] caused by the fraudulent operation of his construction business," in breach of appellant's fiduciary duty to her. The court took judicial notice of a statement of decision and heard testimony about an underlying lawsuit in which appellant was found to have breached his fiduciary duty to respondent. The fraud was committed by appellant before marriage, but the ensuing

---

[3]      The judgment does not refer to a second property, the Lubao property, that appellant discusses. We only review matters raised by the judgment.

6

litigation began during marriage. The court wrote that appellant "did not produce any evidence in defense of the claim."

Although the court did not cite authority for its award of legal fees, the statute relating to remedies for breach of fiduciary duty between spouses is Family Code section 1101. The remedy for breach of fiduciary duty by a spouse "shall include" an award of attorney fees and court costs. (Fam. Code, § 1101, subd. (g).) Appellant cites neither trial testimony regarding the breach of fiduciary duty nor the underlying judgment that provoked the trial court's finding. Without appropriate citations to the evidence, we cannot assess the basis for the trial court's award of attorney fees for breach of fiduciary duty.[4] Appellant's failure to thoroughly discuss the evidence in his brief prevents review.

**4. Reimbursement of Spousal Support**

Appellant initially received spousal support from respondent under a temporary support order made in 2007. At trial, the court ordered appellant to reimburse respondent for spousal support payments in the amount of $43,938, because respondent is the victim of domestic violence perpetrated by appellant, justifying a reallocation and adjustment of the support respondent paid. On appeal, appellant contends that respondent never made a request for reimbursement of spousal support, he had no notice of this issue, and in any event a court may not retroactively modify a prior order for temporary support.

With respect to notice, appellant failed to provide us with a proper record on appeal, so we cannot tell whether appellant had advance notice of the reimbursement issue. Appellant's legal argument with respect to support modification lacks merit. When a court specifically reserves jurisdiction to redistribute temporary support payments, it may subsequently modify the award because the temporary award is not

---

[4]    In attacking the award, appellant relies upon Family Code section 2030, which allows parties to request a "need-based fees and costs award, and only if reasonably necessary for that party's maintenance or defense of the action." (Hogoboom & King, Cal. Practice Guide:  Family Law (The Rutter Group 2013) ¶ 14:125.) The trial court was clearly relying on the breach of fiduciary duty statute; it was not making a need-based attorney fee award. Section 2030 is inapposite.

final or dispositive. (*In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1074-1075.) The court in this case specifically retained jurisdiction to redistribute the temporary support award.

Family Code section 4325 creates a presumption that a spouse who perpetrates domestic violence against the other spouse should not be awarded temporary or permanent spousal support, as a matter of public policy. (*In re Marriage of Cauley* (2006) 138 Cal.App.4th 1100, 1105-1107 ["victims of domestic violence [must] not be required to finance their own abuse"].) As the trial court found—and appellant did not rebut—appellant willfully violated protective and restraining orders made in the criminal and family courts, leading to multiple incarcerations during the dissolution trial. Appellant engaged in domestic violence toward respondent and Sienna. Substantial evidence supports the trial court's ruling reallocating the temporary support appellant received, based on his criminal history of domestic violence.

**5. Custody and Visitation Order**

The court gave respondent sole legal and physical custody of the parties' daughter Sienna. The court found that appellant "committed multiple acts of domestic violence against [respondent] within the past five years, including two incidents involving the Minor during this case, and that he has no insight on how his conduct affects his relationship with the Minor." Appellant was incarcerated during trial because he cannot control his behavior and willfully violated court orders. He has "a serious drinking problem which has led to multiple arrests and multiple incarcerations during this case." Appellant effectively abandoned his daughter, provided no proof of rehabilitation or completion of a batterer's or alcohol treatment program, or parenting class. He has not visited Sienna for over two years.

Based on these factual findings, appellant was authorized to have monitored visitation after completing a therapeutic counseling regimen to address domestic violence, alcohol abuse, anger management and impulse control. Sienna's therapist was to determine the appropriateness of monitored visitation, and appellant was required to provide proof of compliance with Alcoholics Anonymous classes, criminal court orders,

8

and the terms of his criminal probation. Appellant was required to test for drugs and alcohol as a condition of visitation, to post a bond, and to surrender his passport.

Appellant argues that the custody and visitation order is contrary to law and the child's best interests. Family Code section 3048 gives the trial court broad discretion in fashioning a custody and visitation order. The court may consider factors that indicate a risk of child abduction, including conduct designed to entice, withhold or conceal the child; a lack of strong ties of California; strong ties to another state or country; lack of financial reasons to remain in California; lack of parental cooperation; perpetration of child abuse and domestic violence; and a parental criminal record. (Fam. Code, § 3048, subd. (b)(1).) The court expressly listed each of those factors in its ruling. Appellant makes no effort to disprove the existence of those factors.

After making the appropriate findings, the court may order supervised visitation; restrict the parent's right to remove or relocate the child; and require the surrender of passports. (Fam. Code, § 3048, subd. (b)(2).) It has "the widest discretion to choose a parenting plan that is in the best interest of the child." (Fam. Code, § 3040, subd. (c).) The paramount concern is the child's health, safety and welfare. (Fam. Code, § 3020.) The court may determine the best interest of the child by considering a parent's history of abuse and habitual or continual use of drugs or alcohol. (Fam. Code, § 3011.) Given appellant's failure to provide a proper summary of the evidence (as opposed to quoting a few sentences favoring himself), we must assume that the record supports each and every finding and conclusion made by the trial court.

Appellant cites dependency cases for the proposition that the juvenile court may not delegate decisions over visitation to a child's therapist. The reasoning is that "[t]o provide the minor and/or his therapist with a veto power over this essential reunification service seems to us to undermine any hope of actual reunification." (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1139.) Failure to reunify with the child can lead to termination of parental rights to the child. There are no family law cases similarly forbidding a child's therapist from limiting visits. Under the circumstances, where appellant perpetrated domestic violence, has been incarcerated for violating restraining

9

orders, was arrested for an altercation at the office of Sienna's therapist, and has not visited his young child for years because he refuses to pay for a monitor, we cannot say it is an abuse of discretion for a therapist to assess Sienna's fear of appellant before any visits occur.

## 6. Judicial Bias

Appellant cites the Canons of Judicial Ethics regarding a judge's duties to act impartially and diligently. Appellant does not quote any instances in the record showing bias. Instead, he argues that the judgment "smacks of a poisonous attitude." Without showing any particular instances of bias, appellant cannot complain that the judge was biased simply because the judgment went against him. The judgment clearly sets forth the bases for the court's findings, many of which allude to appellant's history of alcoholism and domestic violence, expressing deep concern for the safety and welfare of appellant's child, inasmuch as a mental evaluation performed by the criminal court showed that appellant has no insight into his damaging behavior.

Recognizing that appellant cannot control himself, the judgment serves as appellant's wake-up call to undergo rehabilitation to have a relationship with his child. Appellant may not wish to hear a blunt assessment of his failings as a husband and a father, but a judgment that lays out a roadmap for recovery is not evidence of judicial bias. Further, the judgment sets forth that appellant defrauded respondent on multiple occasions. Between his domestic violence, his criminal convictions and his fraud, appellant had very little credibility as a witness.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                        BOREN, P.J.

We concur:


ASHMANN-GERST, J.          CHAVEZ, J.

10