Filed 11/20/15

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| In re the Marriage of KIERSTIN A. AND MARK LEE SMITH. | |
| KIERSTIN A. SMITH,<br><br>        Appellant,<br><br>v.<br><br>MARK LEE SMITH,<br><br>        Respondent;<br><br>CINDY SMITH,<br><br>        Claimant and Respondent. | E060373<br><br>(Super.Ct.No. SBFSS58771)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. Tara Reilly, Judge. Affirmed.

Jarvis, Krieger & Sullivan, Richard P. Sullivan and Mira J. Tyni; Graves & King, and Dennis J. Mahoney, for Appellant.

Holstein,Taylor and Unitt and Brian C. Unitt for Claimant and Respondents.

1

This appeal arises from the trial court's order that appellant Kierstin A. Smith (Kierstin) pay, pursuant to Family Code[1] sections 2030 and 271, the amount of $124,352 to claimant and respondent Cindy Smith (Cindy), and $151,967, subject to a specified offset, to respondent Mark Lee Smith (Mark).[2] Kierstin contends that the trial court erred by combining cost shifting pursuant to section 2030 with sanctions pursuant to section 271, making no explicit differentiation between sums awarded pursuant to each statute. She further contends that the trial court abused its discretion in making an award under either statute. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

The marriage of Mark and Kierstin was dissolved in 2002, but they have remained engaged in litigation regarding child custody and support, which has expanded to involve Cindy, who is Mark's current wife. The most recent proceedings began in December 2008, when Mark applied for a postjudgment modification of child support, attorney fees, and sanctions, and also included consideration of Mark's January 2010 application seeking a change in child custody, and Kierstin's August 2012 application for a modification of child support. Trial of the substantive issues was concluded on June 27, 2013.

---

[1] Further undesignated statutory references are to the Family Code.

[2] "As is customary in family law proceedings, we refer to the parties by their first names for purposes of clarity and not out of disrespect." (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

2

The trial court heard argument regarding attorney fees and sanctions on July 3, 2013. On November 4, 2013, it filed its order, making findings of fact and awarding $124,352 to Cindy, and $151,967, minus a specified offset, to Mark. With respect to both awards, the trial court stated they were being ordered "pursuant to Family Code sections 2030 and 271 . . . ."

The trial court's findings of fact included the observations that "[Kierstin] and her counsels' zealous advocacy crossed the line and became unreasonable, unduly burdensome and at times an exercise in bad faith. [¶] The court finds that the underlying case was not complicated but was made complicated by the overzealous litigation on [Kierstin's] counsels' part and [Kierstin's] complete abandonment of the litigation process." The trial court described the proceedings as a "morass of litigation, the primary purpose of which was to ruin [Cindy and Mark] financially."

The trial court further found Kierstin to have "no concern about the level of her attorney fees because her father [Robert Hemborg] was committed to paying those fees and costs whatever the amount."[3] The trial court noted that "Robert Hemborg testified at trial that [Kierstin] was due to inherit six (6) million dollars upon his death," and found that the amounts given to Kierstin for her fees and costs were "a loan against [Kierstin's] inheritance"; though Kierstin had reimbursed her father a "trivial" amount for her

---

[3] The trial court found Kierstin's attorneys had already been paid $322,653.39, and were owed another $19,975.50, as of July 3, 2013. In comparison, as of that date Mark had paid $123,257.65 to his attorneys, and owed another $103,559.30. As of June 20, 2013, Cindy had paid $54,009.06 to her attorneys, and owed another $122,660.34.

3

attorney's fees, those amounts were "not intended to serve as repayment" and "he did not expect repayment during his lifetime." The trial court further described Mr. Hemborg as testifying that "he intended on paying all of [Kierstin's] prospective fees that she incurred for her attorneys as well as any attorney fees and/or sanctions that may be ordered against her regardless of the amount," as well as any fees and costs on appeal. In contrast, the trial court described Mark and Cindy as having "no savings or other liquidity that would enable them to finance the litigation on the same level as [Kierstin]," and observed that they "were forced to use credit cards to finance their attorney fees and costs."[4]

## II. DISCUSSION

### A. Standard of Review

"On appeal, we review an attorney fee award under section 2030 for an abuse of discretion." (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 662.) Sanction orders under section 271 are also reviewed under the abuse of discretion standard. (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1478.) Applying the abuse of discretion standard, we consider de novo any questions of law raised on appeal, but will uphold any findings of fact supported by substantial evidence. (*Id.* at p. 1479.) The trial court's order "will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made." (*In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296.)

---

[4] Additional facts will be discussed below as necessary to address Kierstin's claims of error.

4

**B. Analysis**

*1. The Trial Court Did Not Err by Combining Cost Shifting with Sanctions.*

Kierstin contends that the trial court erred by failing to make any distinction between amounts awarded pursuant to section 2030 and amounts awarded pursuant to section 271. The trial court's order, however—making the awards "pursuant to Family Code sections 2030 and 271"—is fairly read to indicate that the amounts awarded would be appropriate, in their entirety, under either statute. In any case, "if a judgment is correct on any theory, the appellate court will affirm it regardless of the trial court's reasoning." (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956.) As such, if the awards are proper under either section 2030 or section 271 (or any other applicable basis), we must affirm the trial court's ruling.

*2. The Trial Court Did Not Err in Its Calculation of the Parties' Relative Circumstances for Purposes of Section 2030.*

Kierstin contends that the trial court abused its discretion in making any award under section 2030. Her argument rests on the premise that the trial court erred by considering the funds paid to her attorneys on her behalf by her father in analyzing the relative circumstances of the respective parties. We find no abuse of discretion.

Section 2030 requires that the trial court "ensure that each party has access to legal representation . . . by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (§ 2030, subd. (a)(1).) In

determining the necessity of making such an award, the trial court must determine what award would be "just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a).) The factors to be considered in determining the relative circumstances of the parties include, to the extent relevant, those used for determining spousal support, enumerated in section 4320, including the catchall "[a]ny other factors the court determines are just and equitable." (§§ 4320, subd. (n); 2032, subd. (b).) Payment of an award under section 2030 may be ordered "from any type of property, whether community or separate, principal or income." (§ 2032, subd. (c).)

The first matter we must address, then, is whether the trial court properly considered the funds Kierstin's father paid to Kierstin's attorneys on her behalf in determining the parties' relative circumstances. It did. In analogous family law contexts, courts have held that "where a party receives recurring gifts of money, the trial court has discretion to consider that money as income . . . ."[5] (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 722-723 (*Alter*).) Even if characterized as a loan, an advance against a party's share of an expected inheritance is properly treated as a gift. (*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1313-1314 [discussing authority regarding advancements on inheritance].)

---

[5] *Alter* specifically involved the question of whether gifts should be considered income for purposes of determining child support payments. (*Alter*, *supra*, 171 Cal.App.4th at p. 723.) As noted, however, similar considerations apply to determining the relative circumstances of the respective parties under section 2030. (See §§ 2032, subd. (b), 4320, subd. (n).) The analysis in *Alter* applies equally well to the our analysis of sections 2030 and 2032.

Here, Mr. Hemborg testified that he has, on a monthly or bimonthly basis, regularly received a bill from Kierstin's attorneys for her litigation expenses, which he has paid, and which have totaled "close to $400,000." Although these payments were characterized as "loans" to Kierstin and memorialized in promissory notes, Mr. Hemborg's expectation was that, aside from "a hundred here and there" that Kierstin had repaid him—so little that he did not even keep track of exactly how much—the "loans" would be repaid, if at all, as an offset against Kierstin's inheritance. Mr. Hemborg specifically testified that he intended to continue his support of Kierstin's litigation efforts through the end of the proceedings, including any appeal. It was well within the trial court's discretion to consider such regular, substantial infusions of cash as part of its determination of the relative circumstances of the respective parties and their ability to maintain or defend the proceedings. Applying the authority discussed above, the funds paid on Kierstin's behalf by her father were properly treated as Kierstin's income for purposes of the section 2030 analysis.

Indeed, to conclude the trial court was required to exclude those funds from consideration would vitiate one of the primary purposes of section 2030 and section 2032, to prevent one party from being able to "litigate[] [the opposing party] out of the case," by taking advantage of their disparate financial circumstances. (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056.) Here, the trial court appropriately looked to the economic reality of the situation, rather than the labels Kierstin prefers to apply. Kierstin's argument that money "borrowed" against an expected inheritance, with no expectation of any substantial repayment during the parent's lifetime, if ever, must be

treated as the equivalent of money borrowed from a credit card company, for purposes of determining the relative economic circumstances of parties for purposes of section 2030, is unpersuasive. The trial court reasonably determined, at least under the circumstances of the present case, that it would be neither just nor equitable to do so. (See § 4320, subd. (n).)

Of course, "[p]arents are not obligated to pay the costs of their children's divorces." (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 532 (*Schultze*).) It is possible, as Kierstin suggests in her briefing, that she will not have "access to any or all of her father's prospective estate for the purpose of paying anyone else's attorneys' fees," even though he has been forthcoming in paying her own. This circumstance, however, does not distinguish the funds Kierstin received from her father from any other source of income: "'Few, if any, sources of income are certain to continue unchanged year in and year out.'. . . [¶] . . . It is irrelevant that there is no legal obligation on the part of the donor to continue making the gifts . . . ." (*Alter*, *supra*, 171 Cal.App.4th at pp. 736-737.) The trial court acted within its discretion by rejecting Kierstin's plea of poverty for purposes of apportioning the overall cost of the litigation equitably between the parties.

*Schulze*, *supra*, 60 Cal.App.4th 519 does not require a different conclusion. In that case, the trial court ordered a noncustodial father to pay his former wife's attorney fees in the amount of $7,500, payable "'forthwith.'" (*Id.* at p. 532.) The court of appeal found the amount of the award itself "unassailable," given the relative circumstances of the parties. (*Id.* at p. 531.) It noted, however, that the proviso that the amount be paid immediately must have been based on the presumption that the father could get the

8

money from his parents; they had previously lent him $8,000 to pay his own fees, but he had no liquid savings or assets. (*Id.* at pp. 531-532.) The court of appeal found the presumption erroneous, stating that "[c]harity, once extended, is still not an entitlement." (*Id.* at p. 532.) Nevertheless, the case involved only a single, relatively small, one-time loan—not, apparently, an advance on inheritance—in contrast to the recurrent, regular gifts totaling hundreds of thousands of dollars at issue in the present case. As noted above, *Alter* establishes that such recurrent, regular gifts may be treated as income in the discretion of the trial court. (*Alter*, *supra*, 171 Cal.App.4th at pp. 722-723.)

In short, Kierstin has shown no abuse of discretion in the trial court's analysis of the relative circumstances of the respective parties pursuant to section 2030. As such, the trial court's awards of attorney fees and costs to Mark and Cindy will be affirmed on that basis.

*3. We Decline to Decide Whether the Awards Also Would Be Proper Under Section 271.*

Given our conclusion that the trial court's awards to Cindy and Mark were proper under section 2030, we need not decide whether they also would be proper under section 271. Much of the reasoning above would, on its face, apply equally to a section 271 analysis. Nevertheless, it must be noted that section 271 has a quite different purpose

9

from that of section 2030, and somewhat different language.[6]  We will therefore leave the question of whether these differences make a difference for another day.

### III. DISPOSITION

The order appealed from is affirmed.  Mark Lee Smith and Cindy Smith are awarded their costs on appeal.

CERTIFIED FOR PUBLICATION


<table>
<tr><td></td><td>HOLLENHORST</td></tr>
<tr><td></td><td>Acting P. J.</td></tr>
</table>

We concur:


<table>
<tr><td>MCKINSTER</td></tr>
<tr><td>J.</td></tr>
</table>


<table>
<tr><td>KING</td></tr>
<tr><td>J.</td></tr>
</table>

---

[6]  The section 271 analysis does not consider the relative circumstances of the respective parties, but focuses on the behavior of an individual party and his or her counsel.  Section 271 allows the trial court to reward or punish conduct by a party or attorney that "furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys."  (§ 271, subd. (a).)  Unlike cost shifting under section 2030, a section 271 award is "in the nature of a sanction."  (§ 271, subd. (a).)  Nevertheless, the trial court may not impose a sanction under section 271 that "imposes an unreasonable financial burden on the party against whom the sanction is imposed."  (*Ibid.*)  Section 271 provides that an award under that section "is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property."  (*Id.*, subd. (c).)