Filed 1/11/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANNA M., | B267004 |
| Petitioner and Respondent, | (Los Angeles County Super. Ct. No. BF029513) |
| v. | |
| JEFFREY E., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Mark A. Juhas, Judge. Affirmed.

Law Offices of Marjorie G. Fuller and Marjorie G. Fuller for Appellant.

Ribet & Silver, Claudia Ribet, and Elizabeth Skorcz-Anthony for Respondent.

_____

## INTRODUCTION

Jeffrey E. and Anna M. are the parents of 10-year-old A.E. They share equal physical custody. In 2013, Anna sought an award of child support.[1] Evidence adduced at trial established that Davis F., Anna's friend and A.E.'s godfather, supports Anna financially and pays her expenses of over $30,000 per month. Anna does not work and has virtually no other source of funds. Jeffrey has an income of over $33,000 per month. Jeffrey argued Davis's financial support of Anna should be considered her income for purposes of calculating child support, thereby eliminating Jeffrey's support obligation. The trial court rejected this argument and issued an order requiring Jeffrey to pay Anna $2,505 per month in child support. On appeal, Jeffrey argues the trial court erred when it failed to characterize Davis's gifts as income to Anna in calculating the child support award. We find no abuse of discretion and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.E. was born in 2006. In August 2007, Jeffrey admitted paternity and sought joint legal and physical custody of A.E. In July 2008, the court granted the parties joint legal custody. Since 2010, the parties have shared equal physical custody of A.E. In October 2012, the trial court issued a bifurcated judgment of parentage, reserving jurisdiction over all other issues, including child support.

Trial on custody and support issues was held over 19 days between August 2013 and March 2014. As relevant to this appeal, the following facts were established at trial. Jeffrey is an

---

[1] As is customary in family law proceedings, we refer to the parties by their first names. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1.)

investment manager. His October 2013 income and expense declaration indicated his monthly income was over $33,000 and he had over $11,000 in monthly expenses. Based on the testimony of Jeffrey, his accountant, and Anna's forensic accountant, the trial court eventually found Jeffrey has a gross monthly income of $33,130, which includes wages, salary, and self-employment income.[2]

Anna's income and expense declaration indicated she had not worked since 2008 and had no income from any source. She identified monthly expenses of over $33,000. At trial, Anna provided only minimal testimony about Davis's financial support and her expenses. Her testimony mainly concerned the information included in her income and expense declaration and the source of that information.

Davis testified he met Anna in 2004. He considers her his "closest best friend" and has no "romantic involvement" with her. A.E. is his goddaughter. Anna lives in a house in Beverly Hills; Davis pays the approximately $10,000 per month rent. Davis has a room at the house. He currently stays there with Anna and A.E. around two weeks of each month.[3] Davis pays a person to work at and take care of the house. He also pays for the food, "all the bills to get paid at the house," and "whatever household products the house needs." He pays a nanny to work for Anna on an as-needed basis. Anna has the use of two vehicles, both of which Davis owns or leases.

---

[2]     Jeffrey does not challenge this finding on appeal.

[3]     Davis testified he otherwise lives in Sherman Oaks, in a house that has been his residence for approximately 20 years.

Anna uses a credit card issued in Davis's name. Davis prefers that she keep spending on the card under $10,000 per month, but there are occasional exceptions. Davis also gives Anna an average of $12,000 per month, which he deposits into an account for her. He further testified he gives Anna money which she uses to pay for clothes and whatever A.E. needs. Davis has no agreement or expectation that Anna will pay him back for her living expenses. Because a business manager pays Davis's bills, he was not sure if he pays the rent and house manager directly, or if Anna pays those bills with money he gives her. He thought Anna paid the "household expenses," but believed he might pay the nanny directly.

Davis has loaned Anna over $1 million for attorney fees in the family law proceedings. He could not identify a source from which he believed Anna could repay these loans. Davis testified he provides financial support to Anna because he loves her and A.E.

In his closing argument, Anna's counsel contended it would be absurd to conclude that because a "Samaritan" provides for a child, the parent with a statutory duty to provide support "is somehow off the hook . . . ." He argued Davis's support was not income to Anna and deviation from the child support guidelines was not appropriate. Anna's counsel asserted that if Davis and Anna were married, the court could not consider "new mate" income, and "[t]he fact that they're not married shouldn't somehow elevate that into a consideration that the court can now make."

Jeffrey's counsel argued the court should characterize Davis's support of Anna as her income and reduce Jeffrey's support obligation to zero. Counsel contended that given the

4

opulent lifestyle Anna provides to A.E. with Davis's gifts, requiring Jeffrey to pay child support would only negatively affect A.E. by reducing the amount of money he could spend on her in his own home. He argued a child support award would therefore penalize Jeffrey while providing no benefit to A.E. As to the "new mate" argument, Jeffrey's counsel simply asserted Davis was not a "new mate."

The trial court found there was no evidence from which it could impute an income to Anna.[4] It determined Jeffrey earns approximately $400,000 per year. The court found Davis pays all of Anna's expenses, totaling between $30,000 and $40,000 per month, although the court noted even Anna "does not fully understand the amount [Davis] pays." The court declined to "impute income under [*In re Marriage of Alter* (2009) 171 Cal.App.4th 718 (*Alter*)]" to Anna, explaining: "While the court agrees that the money [Davis] pays is little more than a gift, unlike *Alter*, he has not paid these expenses for 'years' and as noted above, he is a legal stranger to [Anna] unlike Mr. Alter's mother."

The court noted A.E. enjoys a comfortable lifestyle in both of her parents' homes and arguably a more affluent lifestyle with Anna. Still, the court concluded: "Nevertheless there is a legal preference that parents pay support for their children. Even under the unusual circumstances of this case, this court cannot deviate from guideline, thus effectively relieving [Jeffrey from]

---

[4] The court explained: "[Anna] has been unemployed for years and from what little information the court does have, it is clear that she has limited marketable skills at this time. As a result, the court does not currently impute an income to her."

5

his financial responsibility." The court ordered Jeffrey to pay child support of $2,505 per month.

## DISCUSSION

### The Trial Court Did Not Abuse its Discretion in Failing to Characterize Davis's Gifts to Anna as Her Income When Calculating Child Support

On appeal, Jeffrey argues the trial court erred when it failed to deem Davis's financial support of Anna to be her "income" when calculating child support. We find no abuse of discretion.

#### A. Applicable Legal Principles

The principles governing appellate review of child support calculations and awards are well-established. "Awards of child support and spousal support are reviewed for abuse of discretion. [Citation.] '[W]e do not substitute our judgment for that of the trial court, and we will disturb the trial court's decision only if no judge could have reasonably made the challenged decision. [Citation.]' [Citation.] [¶] In reviewing a child support order, 'we are mindful that "determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule." [Citation.]' [Citation.] '[T]he trial court's discretion is not so broad that it "may ignore or contravene the purposes of the law regarding . . . child support. [Citations.]" [Citation.]' [Citation.]" (*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1312 (*Williamson*).)

"Statutory guidelines regulate the determination of child support in California. (See Fam. Code, §§ 4050-4203.)[5] The

---

[5]     All further statutory references are to the Family Code.

guidelines set forth several important principles relating to child support determinations, including that (1) the interests of the child are the state's top priority, (2) a parent's principal obligation is to support his or her children 'according to the parent's circumstances and station in life,' (3) '[b]oth parents are mutually responsible for the support of their children,' (4) '[e]ach parent should pay for the support of the children according to his or her ability,' (5) children should share in both parents' standard of living, and (6) in cases 'in which both parents have high levels of responsibility for the children[,]' child support orders 'should reflect the increased costs of raising the children in two homes and should minimize significant disparities in the children's living standards in the two homes.' (§ 4053, subds. (a),(b), (d)-(g).) The guideline amount of child support, which is calculated by applying a mathematical formula to the relative incomes of the parents, is presumptively correct. (See §§ 4055, 4057, subd. (a); [citation].) 'The court may depart from the guideline only in "special circumstances" set forth in the child support statutes. (§ 4052).' [Citation.]" (*In re Marriage of Schlafly* (2007) 149 Cal.App.4th 747, 753 (*Schlafly*).)

"Trial courts must calculate child support in accordance with the mathematical formula contained in Family Code section 4055. [Citation.] This mandatory formula 'takes into account both parents' "net monthly disposable income" (§ 4055, subds. (a), (b)), which is determined based upon the parents' "annual gross income" (§ 4058). Section 4058, subdivision (a), defines "annual gross income" as "income from whatever source derived," and lists more than a dozen possible income sources to be considered as part of annual gross income.' [Citation.]" (*Williamson, supra,* 226 Cal.App.4th at p. 1312, fn. omitted.)

7

### B. Financial Contributions from Others and "Income" in Child Support Calculations

In defining "annual gross income" for a child support calculation, section 4058, subdivision (a) sets forth a non-exclusive list of possible sources of income that does not mention gifts. California courts have accordingly considered gifts and other financial benefits not identified in the statute in the factual contexts in which they arise to determine whether they may be included or excluded as "income" in a child support guideline calculation.

For example, in *In re Marriage of Scheppers* (2001) 86 Cal.App.4th 646 (*Scheppers*), the obligor father sought a reduction in his child support obligation based on the mother's receipt of a lump sum payment as the beneficiary of a life insurance policy. The trial court treated the interest that could be earned from the lump sum amount as income to the mother, but not the corpus of the life insurance death benefit itself. The Court of Appeal affirmed the trial court ruling. The court noted that while the statutory definition of income is broad under section 4058, "it is not unlimited. It does not extend to every type of payment or economic benefit received by a parent." (*Id.* at p. 649.) The court explained, in part: "First, it is established that gifts, whether inter vivos [citation] or testamentary [citation], are not within the scope of the statutory definition of income. It is impossible to draw a rational distinction between a gift made by designating the donee as the beneficiary of a will and a gift made by designating the donee as the beneficiary of a life insurance policy." (*Ibid.*)

The court further reasoned life insurance death benefits are not income under the federal Internal Revenue Code, which is persuasive in the interpretation of section 4058. Life insurance proceeds also do not fall within the common-law definition of income. The *Scheppers* court explained: "The traditional understanding of 'income' is the gain or recurrent benefit that is derived from labor, business, or property [citation] or from any other investment of capital [citation]. Almost every type of income specified by section 4058, subdivision (a), is either a return from labor, business, or property (such as wages, dividends, and rents) or else a substitute for that return (such as disability insurance benefits)." (*Scheppers, supra,* 86 Cal.App.4th at p. 650.)

Several courts have also considered whether non-cash financial benefits may be considered income to a parent in a child support calculation. In *In re Marriage of Loh* (2001) 93 Cal.App.4th 325 (*Loh*), the court rejected an approach that would characterize as income anything that reduces a parent's living expenses, such as mortgage-free or rent-free housing. (*Id.* at p. 334.) In *Loh,* the obligee mother sought an increase in child support based on evidence of the father's "lifestyle" with his girlfriend. (*Id.* at p. 327.) The court concluded the trial court erred in finding the father's income was greater than the evidence established, and in departing from a calculation based on income reported in the father's tax returns. (*Id.* at p. 333.) The *Loh* court further considered how the trial court should proceed when significant nontaxable benefits are involved, such as when the parent has free housing:

9

"[T]he proper course was to first calculate the guideline amount in light of the parents' incomes as revealed by such evidence as tax returns, income and expense declarations and pay stubs, and then, under section 4057, to adjust the amount upward in light of the free housing benefit. Such an approach respects the rebuttable correctness of the mechanically calculated guideline amount, and allows child support awards to properly reflect the parents' standard of living without doing violence to the word 'income' in a way that would make the Sheriff of Nottingham proud."[6] (*Loh, supra,* 93 Cal.App.4th at pp. 335-336, fn. omitted.)

The court found there was insufficient evidence to upwardly modify the child support award using this approach in the case before it. (*Loh, supra,* 93 Cal.App.4th at p. 336.) The mother had not attempted to establish the father's tax returns did not fairly reflect his income. (*Id.* at pp. 337-338.) Further, section 4057.5 prohibited the trial court's consideration of the father's lifestyle, which was subsidized by his new girlfriend.[7] (*Loh,* at p. 337.)

---

[6] The *Loh* court thus disagreed with the approach taken in *Stewart v. Gomez* (1996) 47 Cal.App.4th 1748 (*Stewart*) and *County of Kern v. Castle* (1999) 75 Cal.App.4th 1442 (*County of Kern*), in which the courts included the value of "mortgage-free" or "rent-free" housing as income to the obligor parent in a child support award calculation. (*Loh, supra*, at pp. 334-336.)

[7] Under section 4057.5, subdivisions (a)(1) and (a)(2), the income of the obligor or obligee parent's "subsequent spouse or nonmarital partner shall not be considered when determining or modifying child support," excepting only the "extraordinary case where excluding that income would lead to extreme and severe hardship to any child subject to the child support award. . . ."

10

The appellate court followed a *Loh* approach in *Schlafly, supra,* 149 Cal.App.4th 747. The obligor father lived in a "mortgage-free" home that had a rental value of $3,000 per month. (*Id.* at p. 751.) The reviewing court reversed an order in which the trial court included $3,000 of non-taxable income to the father in the child support calculation, based on the rental value of the house. The court noted the mortgage-free housing was neither an employee benefit nor resulted "from an effort to funnel income into a form that would not be recognized in the DissoMaster calculation." (*Id.* at p. 759.) However, the reviewing court concluded the trial court properly considered the father's lack of any housing expense when deviating upward from the guideline in temporary child support orders and it could do so again on remand. (*Id.* at pp. 759-760.)

Likewise, in *M.S. v. O.S.* (2009) 176 Cal.App.4th 548 (*M.S.*), the reviewing court concluded the trial court erred when it characterized as income an Indian tribe's direct payment of the obligor father's attorney fees in the proceedings. Although the payment of the fees could be easily valued, the court explained the tribe paid the attorneys directly, and if the father incurred no fees he received no benefit. Thus, "the payments are not part of [the father's] regular income or included in his cashflow. This case is akin to *Stewart*, in which the inclusion of a benefit resulted in a presumptively correct guideline amount based in part on money the father simply does not have available for support." (*Id.* at p. 560.) While bonuses the father received from the tribe were properly deemed income to him for purposes of calculating child support, the tribe's direct payment of his attorney fees was not.

11

These cases reflect a concern that a child support award should usually not be based on monies the parent does not actually have available for support.  Under a *Loh* approach, while nontaxable financial or non-cash monetary benefits may justify a deviation from the child support guidelines under section 4057, they are not characterized as income to the parent.  (cf. *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1080 [rejecting argument that husband's income consisted only of his "cash flow" and did not include loan forgiveness that was "income" under tax laws].)

### C.  *Alter* and Subsequent Cases

In *Alter, supra,* 171 Cal.App.4th 718, the court considered whether cash a grandparent provided to an obligor parent could properly be characterized as income to that parent in a child support calculation.  In *Alter*, the obligor father sought a reduction in his child support obligations.  His mother paid many of his expenses, allowed him to live in a house she owned, and gave him $6,000 each month, $3,000 of which was to pay the rent she charged him.  The grandmother's $6,000 monthly payments to the father occurred during the marriage and continued after the dissolution; indeed, the monthly payments had occurred for more than a decade.  The trial court characterized the monthly $6,000 as the father's income, as well as $1,000 in other cash and benefits.  (*Id.* at pp. 723-725, 731.)

On appeal, the father argued the trial court erred as to the $6,000 payments, contending gifts cannot be considered income in the guideline support calculation.  The *Alter* court rejected any such "absolute rule." (*Alter, supra,* 171 Cal.App.4th at p. 731.) The court noted section 4058, subdivision (a)'s list of income sources is nonexclusive and nothing in the statute *precludes* a

court from considering gifts as income for child support purposes. (*Id.* at pp. 732-733.)  The court reviewed common definitions of income and determined they also do "not unequivocally preclude considering recurring gifts of money as income."[8]  (*Id.* at pp. 733-734.)  *Alter* distinguished California cases that considered only one-time gifts (*Scheppers; County of Kern*), and cases in which the court refused to characterize noncash benefits unrelated to employment as income for child support purposes (*Loh; Schlafly*). (*Alter, supra,* at pp. 733-734.)  The court reasoned that concerns related to the complicated nature of determining the value of noncash benefits and the potential for inconsistent results are not present when the gifts are cash and are recurrent.  (*Id.* at pp. 734-735.)

The *Alter* court explained that although the definition of income under federal tax law is helpful in many cases, it is not controlling.  This is in part because the child support and federal income tax statutes have differing purposes and a parent may have non-taxable income that is nonetheless available to support the child.  (*Alter, supra,* 171 Cal.App.4th at p. 735.)  The court further rejected the argument that a gift should not be deemed income because of the lack of a guarantee that the obligor parent will continue receiving such gifts in the future.  (*Id.* at p. 736.)

---

[8]     The court considered definitions such as: " 'income' is simply 'a gain or recurrent benefit that is usu[ally] measured in money and for a given period of time, derives from capital, labor, or a combination of both . . . .' [Citation.]" (*Alter, supra,* 171 Cal.App.4th at p. 733.)  But the court also considered a legal dictionary definition of income as " '[t]he money or other form of payment that one receives, usu[ally] periodically, from employment, business, investments, royalties, *gifts* and the like.' [Citation.]" (*Id.* at p. 734.)

Adopting the reasoning of an Illinois appellate court decision, the court explained few sources of income are certain to continue unchanged year after year, thus the relevant focus is " 'the parent's economic situation at the time the child support calculations are made by the court.' [Citation.]" (*Ibid.*)

However, the *Alter* court did not hold gifts to a parent must *always* be considered income. Instead, the court concluded: "[N]othing in the law prohibits considering gifts to be income for purposes of child support so long as the gifts bear a reasonable relationship to the traditional meaning of income as a recurrent monetary benefit. But while regular gifts of cash may fairly represent income, that might not always be so. Therefore, the question of whether gifts should be considered income for purposes of the child support calculation is one that must be left to the discretion of the trial court."[9] (*Alter, supra,* 171 Cal.App.4th at pp. 736-737.)

In *Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633 (*Kevin Q.*) and *In re Marriage of Smith* (2015) 242 Cal.App.4th 529 (*Smith*), the reviewing courts found no abuse of discretion in the trial court's consideration of regular, recurrent gifts from a parent to an adult child when assessing the adult child's ability to pay attorney fees in a family law proceeding. Although both *Kevin Q.* and *Smith* relied in part on *Alter*, neither concerned "income" in the context of the child support calculation, which involves policy objectives different from those involved in a fee

---

[9] We note that in *Alter*, the obligor father also argued the trial court should have attributed income to the obligee mother based on money the grandmother (his mother) spent directly on the children's expenses. (*Alter, supra,* at p. 738.) The appellate court did not consider the claim because the father provided no authority for the argument and failed to raise it in the trial court.

award.  (See *Kevin Q., supra,* 195 Cal.App.4th at p. 645 [parents had equal ability to pay fees in light of regular, recurrent infusions from parent to adult child made over a long period of time]; *Smith, supra,* 242 Cal.App.4th at p. 535 [parent's payment of wife's attorney fees allowed her to engage in abusive litigation; §§ 2030 and 2032 intended to prevent a party from litigating the other side out of the case].)

In contrast, in *Williamson,* the reviewing court found no abuse of discretion in the trial court's ruling declining to base a child support calculation on gifts the obligor father had historically received from his wealthy parents.  During the marriage, the grandparents regularly gave the husband, wife, and children annual tax-free gifts of $26,000 each.  On one occasion the grandparents gave the father a one-time gift of $900,000.  On other occasions the grandparents advanced money to the father and mother for various expenses, such as home purchases and renovations.  (*Williamson, supra,* 226 Cal.App.4th at p. 1308.)  On appeal, the obligee mother contended the trial court should have characterized the grandparents' historical cash advances as income to the father for the purposes of calculating child and spousal support.  (*Id.* at p. 1307.)

The *Williamson* court disagreed.  The court discussed *Alter*, but noted two features that distinguished the case before it.  The first was that the cash advances from the grandparents "were made upon request, depending upon the family's needs . . . .  In some years [the parents] needed large sums of cash, primarily to purchase and renovate homes.  In other years, they requested little or no assistance.  In that sense, the advances were irregular and outside 'the traditional concept of

15

income as a recurrent, monetary benefit.' [Citation.]" (*Williamson, supra,* 226 Cal.App.4th at p. 1314.)

The second distinguishing feature was evidence establishing the grandparents had ceased giving the obligor father gifts. Thus, even though the trial court properly characterized the annual $26,000 gift as income, substantial evidence supported the trial court's conclusion that it would be speculative to assume such gifts would be made in the future. The appellate court reasoned: "Generous relatives do not have a duty to support a family member's minor children. That duty belongs to the children's parents. (§ 4053, subd. (b).) Once gifts to a supporting parent have ceased, without any reasonable indication they will resume, they may not be used to impute income to that parent. [Citation.] Treating such gifts as income would 'lead [] to support payments based on money the parent does not have.' [Citations]." (*Williamson, supra,* 226 Cal.App.4th at p. 1315.) The trial court's decision to exclude the cash advances as income was therefore "within the proper exercise of discretion." (*Ibid.*)

### D. The Trial Court Did Not Abuse its Discretion in this Case

The legal authorities discussed above indicate regular, recurrent gifts to a parent may be characterized as income to that parent for purposes of calculating guideline child support, but they do not indicate gifts *must* be so characterized in every case. Instead, the trial court has discretion to consider gifts as income when they are a regular, recurrent monetary benefit to the parent. Further, courts are mindful not to base a child support calculation on monies a parent does not actually have.

16

### i. We Do Not Resolve this Case Under Section 4057.5

On appeal, Anna contends section 4057.5 determines the outcome of this case. We decline to resolve the case under section 4057.5 for two reasons. First, while the parties agree there is no statutory definition of "nonmarital partner," the evidence did not clearly establish the relationship between Davis and Anna is equivalent to a spousal relationship. Instead, the uncontradicted evidence was that Davis is A.E.'s godfather and he considers Anna his "best friend" with whom he has no romantic involvement. Further, Anna's trial brief identified Davis only as Anna's friend and A.E.'s godfather.

Second, and related, is the fact that Anna did not contend in the trial court that section 4057.5 applied. As a result, the record on this issue was not developed. Although Anna's trial brief acknowledged Jeffrey intended to argue Davis's financial support of Anna should be characterized as her income, and argued in response that *Alter* did not apply to the case, the brief did not invoke section 4057.5. In closing arguments, Anna's counsel raised section 4057.5, but only as an analogy.[10] The trial

---

[10] Counsel argued: "I just want to ask if I can just make one more point, not a factual point . . . . If the court doesn't consider new mate income when considering a child support –and I'll accept if to not do so would not be in the best interest. If the court doesn't consider new mate income, if [Davis] and [Anna] were married, the moneys that she is receiving to defray her living expenses wouldn't be considered. The fact that they're not married shouldn't somehow elevate that into a consideration that the court now can make. It's less compelling."
The following colloquy ensued with Jeffrey's counsel: "[Court]: And, what about Mr. Kaplan's argument that if it were a new

17

court made no findings of fact on the nature of the relationship between Anna and Davis; to do so would have required credibility determinations and a drawing of inferences from the evidence, all of which are within the province of the trial court.  We therefore decline to resolve this case under section 4057.5.  (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1403, fn. 1; *McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612, 618.)

### ii.   The Trial Court's Ruling was Within its Discretion

We turn to the issue of whether the trial court erred in failing to characterize Davis's financial support of Anna as her income.  Jeffrey contends *Alter* governs.  However, this case differs from *Alter* in several respects.[11]  A large portion of the

_____

mate, if she were married to Davis, you wouldn't take it into consideration in a dissomaster, but you could deviate from guideline because of it? [Jeffrey's Counsel]: But she's not.  It's not a new mate. [Court]: Right.  That's right.  [Jeffrey's Counsel]: So that argument existed in *Alter*. . . . It's actually a more interesting argument to make when it's mom as opposed to some guy who for some reason just continues to give her this money.  It's actually a more interesting argument in *Alter* than even here."

In his rebuttal argument, Anna's counsel stated: "This is not a case where the court could consider nonmarital partner income.  It shouldn't consider.  And I think the court has indicated, or at least I interpret that the court won't include that in this case."  However, counsel made this statement in the context of a discussion of Jeffrey's income and contributions *his* girlfriend made to the household.

[11]    Jeffrey does not contend on appeal that the trial court abused its discretion in failing to consider Davis's financial

18

financial support Anna receives from Davis is in the form of indirect, non-cash benefits, such as rent-free housing, payments to others for services provided to her, and use of Davis's possessions, such as his cars. The evidence did not establish the money Davis uses to cover those expenditures is otherwise available to Anna for other purposes. Consistent with *Loh*, *Schlafly*, and *M.S.*, the trial court reasonably excluded this financial support from the calculation of Anna's income.

Even as to the cash or cash-equivalent financial support Davis gives Anna, the court could reasonably determine these benefits were not properly characterized as income to her for purposes of the child support calculation. Under several analyses courts have used to determine income, Davis's financial support would not qualify. There was no evidence the financial support is derived from Anna's capital, labor, or any combination of the two. (*Alter*, *supra*, 171 Cal.App.4th at p. 733.) There was no evidence Davis's financial support is income to Anna for federal income tax purposes; Jeffrey did not argue Anna's true income under the tax laws was different from what she represented to taxing authorities. (*Loh*, *supra*, 93 Cal.App.4th at p. 336.)

Moreover, while *Alter* provided legal authority for the court to characterize at least some of Davis's financial support as Anna's income, the facts of this case are significantly different. Unlike the situation presented in *Alter*, very little about Anna's arrangement with Davis appeared clear cut. The relationship between Davis and Anna is one of legal strangers. There is no

support of Anna as a basis to deviate from the guideline amount, as suggested in *Loh*. Jeffrey also does not challenge the trial court ruling declining to impute income to Anna based on her earning capacity.

19

familial relationship between Davis and Anna as there was in *Alter*, *Kevin Q., Smith,* and *Williamson.* The evidence did not establish how long Davis had been fully supporting Anna, how long he had been giving her cash gifts, or how much the amount of cash he gives her varies from month to month.[12] Davis testified the arrangement he has with Anna was not in place when A.E. was born and it "evolved throughout the years" after she was born. He further indicated his financial arrangement with Anna "was not the same when [A.E.] was born as it is now."[13] He was not asked how the arrangement had changed. When asked how much money he deposited into Anna's account

---

[12] While Davis testified he transferred money directly to Anna, the hearing also included the following colloquy:
"Q: At the present time, do you provide funds to Anna for her and [A.E.'s] support?
[Davis]: Yes.
Q: And is there a fixed amount or is there some other arrangement by which you do that?
A: There's another arrangement how I do that.
Q: What's that arrangement?
A: I, you know, give Anna some limits to stay within a certain amount of, you know, from here to there. And I have a feel for how much things cost and stuff. And the house, because I stay there too, I mean, I eat all the food and I have, you know – you didn't ask me this question, but I have the house set up so that it has someone that works there that takes care of the house and just to keep the house well. And that keeps me happy too."

[13] In an earlier deposition, Davis testified he had transferred money into Anna's bank account before she stopped working as a personal trainer, and when she stopped working the amount of money he provided to her changed. He did not know the amount of the change.

on a monthly basis, Davis answered the amount varied every month.  When asked about the range, he responded the average was "about 12 grand a month."

The record does not indicate whether the amount of cash Davis gives Anna is based on her requests for a particular sum, is tied to her actual spending and is intended to pay for specific expenditures, or if the amount is determined at Davis's whim.  A reasonable interpretation of the evidence is that Davis's support of Anna resembles the gifts provided to the obligor father in *Williamson* that were not deemed income: occurring on an as-needed basis to pay particular expenses.  (*Williamson, supra,* 226 Cal.App.4th at p. 1314.)  In contrast, in *Alter*, the obligor's mother had been giving him $6,000, a fixed amount, every month for over a decade.

It is reasonable for a court to conclude a grandparent's monthly gifts to a parent, in the same amount, not tied to a specific expense, and continuing for years, are regular enough to be characterized as income to that parent and are funds available to pay child support.  It is equally reasonable to conclude, in this case, that gifts from a legal and familial stranger, of less than specific amounts, that have taken place for an unestablished duration, do not bear enough of a reasonable relationship to the traditional meaning of income as a recurrent monetary benefit to be deemed income to that parent for purposes of calculating—and ultimately eliminating—the child support that would otherwise be payable.

Under section 4053, the trial court must consider several principles in implementing the child support guideline, including that a parent's first and principal obligation is to support his or her minor children according to the parent's circumstances and

21

station in life (§ 4053, subd. (a)), both parents are mutually responsible for the support of their children (§ 4053, subd. (b)), and the guideline "seeks to place the interests of children as the state's top priority." (§ 4053, subd. (e).)

In *Alter*, failing to characterize the grandmother's cash gifts as the father's income would take money away from the children, inhibiting their ability to share in the lifestyle enjoyed by both parents, including the father. In this case, characterizing Davis's financial support as Anna's income does not increase the child support award, and, in practical terms, it would render A.E. completely dependent on the largesse of a legal stranger when in her mother's care. Moreover, in light of Jeffrey's monthly income and expenses, the trial court could reasonably conclude obliging Jeffrey to make a child support payment of $2,505 per month would not impact his ability to provide for A.E., or have any significant detrimental impact on his financial situation. (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1050-1051.)

Consistent with *Alter*, the trial court had the discretion to characterize Davis's cash gifts to Anna as her income, but it was not required to do so if it concluded those gifts do not fairly represent income and are not funds available for child support. We conclude the evidence was sufficient for the trial court to reasonably conclude the financial support Davis provides Anna does not represent a regular, recurrent monetary benefit fairly representing income for purposes of calculating the child support award.

## DISPOSITION

The trial court order is affirmed.  Respondent to recover her costs on appeal.

## CERTIFIED FOR PUBLICATION

BIGELOW, P.J.

We concur:

FLIER, J.

GRIMES, J.

23