Filed 6/13/22 (unmodified opinion attached)

**CERTIFIED FOR PARTIAL PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re the Marriage of PEDRO AVILES and JESSICA VULOVIC. | |
| PEDRO AVILES,<br><br>    Appellant,<br>v.<br><br>JESSICA VULOVIC,<br><br>    Respondent. | E076743<br><br>(Super.Ct.No. FLHE2000349)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT

The opinion filed in this matter on June 9, 2022 is modified as follows.

(1)  In the caption, on page 1, "CERTIFIED FOR PUBLICATION" is changed to "CERTIFIED FOR PARTIAL PUBLICATION.*"

(2)  On page 1, this footnote is added:

\*      Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IV.

(3)  At the end, on page 13, "CERTIFIED FOR PUBLICATION" is changed to "CERTIFIED FOR PARTIAL PUBLICATION."

Except for these modifications, the opinion remains unchanged.  This modification does not effect a change in the judgment.

1

CERTIFIED FOR PARTIAL PUBLICATION

RAMIREZ
P.J.

We concur:

SLOUGH
J.

FIELDS
J.

Filed 6/9/22 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| In re the Marriage of PEDRO AVILES and JESSICA VULOVIC. | |
| PEDRO AVILES, | E076743 |
| Appellant, | (Super.Ct.No. FLHE2000349) |
| v. | OPINION |
| JESSICA VULOVIC, | |
| Respondent. | |

APPEAL from the Superior Court of Riverside County. Elaine M. Kiefer, Judge. Affirmed.

Holstrom, Block & Parke and Ronald B. Funk for Appellant

Westover Law Group and Andrew L. Westover for Respondent.

1

In March 2011, when husband Pedro Aviles and wife Jessica Vulovic[1] got married, Jessica's divorce from a former husband was not yet final. She later testified, however, that she was unaware of this; she discovered it only in May 2011, and she obtained a final judgment of divorce in March 2012. In April 2013, Pedro and Jessica went through a second marriage ceremony; in September 2013, they went through a third marriage ceremony.

Alas, three weddings was not the charm; the marriage did not last. In 2020, Pedro filed the present divorce proceeding. The trial court found that Jessica was at least a putative spouse; on that basis, it awarded her spousal support and attorney fees.

Pedro contends that, as a matter of law, Jessica did not qualify as a putative spouse. We will hold that Jessica qualified as a putative spouse because she adequately showed that, at the time of the original marriage, she had a good faith belief that she was unmarried.

Pedro also contends that the trial court erred by basing spousal support on his 2020 income rather than his 2021 income. We will hold that, because Pedro filed a false income and expense declaration for 2020, the trial court could reasonably disregard his income and expense declaration for 2021 and rely instead on what Jessica showed was his true 2020 income.

---

[1] We will refer to the parties by their first names, for two reasons. First, this is customary in family law cases. (*In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 531, fn. 2.) Second, it makes it easier for the reader to keep track of who is the husband and who is the wife.

# I

## STATEMENT OF FACTS

The following facts are taken from the parties' declarations and their testimony at the evidentiary hearing.

In October 2006, Jessica filed a petition for a divorce from her then-husband, Alexander Vulovic. She believed that she would be divorced automatically six months after filing the petition.

In October 2007, Pedro and Jessica began dating. They were married in Las Vegas in March 2011.

In May 2011, when Jessica appeared, in pro. per., at a child support hearing in her divorce proceeding, the judge told her that her divorce was not final. After that, Pedro helped her retain an attorney; however, as far as he knew, the attorney's role was to obtain child custody and child support. Pedro never went to any of the hearings in Jessica's divorce case, because she told him "if [he] showed up, her ex-husband would flip out . . . ." In March 2012, Jessica's divorce became final.

In April 2013, at Pedro's request, he and Jessica went through a marriage ceremony in a Catholic church. To be eligible, Jessica went to church every week for 16 months and attended adult confirmation classes for 13 months. Pedro testified that they did not receive "a California wedding certificate." Jessica testified that they received a marriage certificate "through the [c]hurch" rather than through the county.

In September 2013, Pedro and Jessica went through another marriage ceremony at a winery, in front of 200 guests. They wanted to "celebrat[e] [the] marriage with all the family members." They did not receive a marriage certificate.

In January 2020, the spouses separated and Pedro filed the present divorce proceeding. In April 2020, he found a petition to annul Jessica's marriage to Mr. Vulovic, signed by her and dated in December 2012 but never filed. On further investigation, he learned for the first time that she was still married when she first married him.

II

STATEMENT OF THE CASE

In August 2020, Jessica filed a request for orders (RFO) for spousal support and attorney fees.

In November 2020, Pedro filed an amended petition, for an annulment.

In his opposition to Jessica's RFO, Pedro argued that she was not entitled to spousal support or attorney fees because she was still married when she purported to marry him. He also argued that she did not qualify as a putative spouse: "The fact that [Jessica] obtained a [j]udgment [of divorce] from her previous husband after her wedding to [Pedro] demonstrates that she knew she was still married . . . ."[2] Finally, he argued

---

[2] Pedro also argued that, in September 2012, the spouses had entered into a postmarital agreement providing that "should the parties separate before March 2020, there will be no spousal support payable by either party." Jessica admitted that there was a postmarital agreement; she did not say one way or the other whether it limited spousal support. Pedro did not introduce the agreement in connection with Jessica's request for

that Jessica fraudulently induced him to take part in the April 2013 and September 2013 marriage ceremonies by concealing the fact that she had been married at the time of the original marriage.

On March 2021, after an evidentiary hearing on the RFO, the trial court ruled that Jessica was at least a putative spouse: "Both parties believed that they were married to each other in 2011 when [Jessica] determined or found out that she was still married to Mr. Vulovic." "There is no evidence that the court finds credible that [Jessica] did not have a good-faith belief that she and [Pedro] were legally married . . . ."

The trial court declined to make a finding as to whether the April 2013 ceremony resulted in a valid marriage: "Whether it's a valid marriage or not, I don't have enough information on that at this point."

It awarded Jessica $9,353 a month in temporary spousal support and $12,541 in attorney fees.

### III

### THE FINDING THAT JESSICA WAS A PUTATIVE SPOUSE

Pedro argues that Jessica, as a matter of law, was not a putative spouse.

A bigamous marriage is invalid. (Fam. Code, § 2201, subd. (a)(1).) "Parties to an 'invalid' marriage generally do not have the rights and obligations granted to and

---

spousal support (although he had introduced it in connection with an earlier motion) and did not testify to what it said.

In this appeal, Pedro does not argue that the trial court's award of spousal support violated the postmarital agreement.

imposed upon spouses under the Family Code. But there is an important exception: A party to an invalid marriage who has 'putative' spouse status may be entitled to property, support and attorney fees/costs rights similar to those attaching upon the dissolution of a valid marriage. [Citations.]" (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2021) ¶ 19:40; see also Fam. Code, §§ 2251, 2254, 2255.)

A putative spouse is one who "believed in good faith that the marriage was valid . . . ." (Fam. Code, § 2251, subd. (a); see also Code Civ. Proc., § 377.60, subd. (b)(2).) "The good faith inquiry is a subjective one that focuses on the actual state of mind of the alleged putative spouse. . . . [T]here is no requirement that the claimed belief be objectively reasonable . . . ." (*Ceja v. Rudolph & Sletten, Inc.* (2013) 56 Cal.4th 1113, 1128.)

"We review a finding that a party is a putative spouse under the substantial evidence standard of review. [Citation.] ""When a finding of fact is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citations.] [¶] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.""" [Citation.]" (*In re Marriage of Guo & Sun* (2010) 186 Cal.App.4th 1491, 1497, disapproved on other grounds in *Ceja v. Rudolph & Sletten, Inc.*, *supra*, 56 Cal.4th at pp. 1126, 1128, fn. 12.)

Jessica testified that, at the time of the marriage in March 2011, she believed that her divorce had become final. She explained, "I was pro per. . . . I was under the impression that once I had filed and waited six months, . . . that I would be divorced. I was unaware that I needed to lodge a judgment." She first learned that the divorce was not actually final in May 2011.

This was substantial evidence sufficient to support the trial court's finding that she was a putative spouse. "A witness may competently testify to his own state of mind when the witness' state of mind is relevant to any issue in the case. [Citation.]" (*Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 583.) "The testimony of a single witness, unless it is impossible or inherently improbable, will be sufficient to support the challenged findings. [Citation.]" (*Antelope Valley Groundwater Cases* (2020) 59 Cal.App.5th 241, 260.) If Jessica's belief was negligent, unreasonable, or ignorant, that would not require the trial court to find that her claimed belief was not in good faith.

At oral argument, Pedro's counsel insisted that the trial court could not find that Jessica's belief was in good faith unless she testified to *why* she held it. This is an attempt to drag an objective good faith standard in through the back door. Jessica's failure to explain *why* she believed her divorce was final was merely some circumstantial evidence that her belief was not genuine. It was up to the trial court to choose to believe Jessica's direct evidence or the contrary circumstantial evidence. Thus, the trial court *could* have found that her purported belief was *not* in good faith, but it did not have to.

Pedro notes that a person who marries a bigamist in reliance on the bigamist's false representation that he or she is unmarried can be a putative spouse. He leaps to the conclusion that a bigamist can *never* be a putative spouse, because he or she is *never* relying on the other spouse's false representations. However, this is only one example of a putative spouse. We see no reason why a person who believes, mistakenly but in good faith, that he or she has been divorced cannot qualify as a putative spouse. (E.g., *Smithers v. Smithers* (Fla. Ct. App. 2001) 804 So.2d 489, 491; *Saacks v. Saacks* (La. Ct. App. 1997) 688 So.2d 673, 675-677.)

Pedro "challenge[s]" Jessica to find a "case in California in which the bigamist spouse has been determined to be a putative spouse." Actually, it is Pedro, as the appellant, who has the burden of demonstrating that the trial court erred. But in fact, there is a case that supports Jessica's position: *Estate of Hafner* (1986) 184 Cal.App.3d 1371. There, both spouses were bigamists. Charles knew he was a bigamist; he falsely told Helen that he had been divorced. Helen did not know she was a bigamist; she had obtained a Mexican divorce which, unbeknownst to her, was invalid. (*Id*. at p. 1379.) The court nevertheless held that Helen was a putative spouse. (*Id*. at p. 1382.)

Finally, Pedro argues that once Jessica found out, in May 2011, that her divorce was not yet final, she was no longer a putative spouse. Putative spouse status, however, requires that the spouse "*believed* in good faith that the marriage was valid" (Fam. Code, § 2251, subd. (a)) — i.e., in the past, at the time of the marriage. It does not require that the spouse "believe" the marriage is valid in the present. That requirement would be

8

unworkable; such a spouse would not realize that he or she needs to prove putative spouse status.

In support of this argument, Pedro cites *Lazzarevich v. Lazzarevich* (1948) 88 Cal.App.2d 708 (*Lazzarevich*). There, the husband filed for divorce; the spouses reconciled, but unbeknownst to either of them, a final divorce decree was entered. (*Id*. at pp. 710-711.) "[T]he parties separated on August 1, 1945. On August 10, 1945, [the wife] discovered that the final decree of divorce had been entered . . . . On October 1, 1945, she went to live with [the husband] and continued to do so until April 1, 1946." (*Id*. at p. 718.) The wife did *not* seek a property division or spousal support. (See *id*. at pp. 717-718.) Rather, she filed an action "in *quantum meruit* seeking the recovery of the value of services rendered and contributions advanced . . . during the putative marriage." (*Id*. at p. 717; see also *id*. at pp. 710, 714-717.)

The appellate court held that, as a putative spouse, the wife was entitled to recover in quantum meruit for services and advances through August 10, 1945. (*Lazzarevich*, *supra*, 88 Cal.App.2d at p. 718.) However, she was not entitled to recover for any services and advances after August 10, 1945, because then she was no longer a putative spouse. (*Id*. at pp. 718-719.)

In sum, *Lazzarevich* held that knowledge that the marriage was invalid cut off the wife's right to recover in quantum meruit. The case has no bearing on a putative spouse's right to recover spousal support or attorney fees. A spouse is entitled to these even after separation — indeed, even after divorce — based on the fact that a marriage

9

used to exist. Likewise, a putative spouse is entitled to them based on the belief that a marriage used to exist, even though that belief has since been dispelled.

We conclude that the trial court properly found that Jessica was, at a minimum, a putative spouse. We therefore need not decide whether the April 2013 or September 2013 ceremonies gave rise to a lawful marriage.

IV

SPOUSAL SUPPORT

Pedro contends that the trial court erred by awarding spousal support based on his 2020 income rather than his 2021 income.

A.     *Additional Factual and Procedural Background.*

In November 2020, Pedro filed an income and expense declaration stating that he had a salary of $11,538 a month.

In March 2021, he filed a new income and expense declaration. It stated that in January 2021, he had started working for a new employer, at a salary of $10,416 a month, plus $5,208 a month in commissions.

Jessica filed a request for sanctions based on alleged perjury. She lodged documents, obtained from Pedro's former employer, showing that his income in 2020 was actually $532,795.30.[3] She argued, "i[t] is simply not credible [that] he quit a job paying an average of $44,399 per month for a job paying $15,624 per month."

---

[3]     Pedro has not included the lodged documents in the appellate record. However, "it is appellant's burden to provide an adequate record demonstrating error."

10

In a responsive declaration,[4] Pedro claimed that in 2020, he was not able to generate sales due to the COVID-19 pandemic. He resigned in anticipation of being terminated. His attorney prepared his 2020 income and expense declaration, based on his paystubs; he signed it assuming it was correct.

At the hearing, Pedro further claimed that 2020 had been an "extraordinary year." Over the preceding five years, his income had averaged $225,000 a year.

The trial court based its spousal support calculations on Pedro's 2020 income of $538,795.[5] It found that he was "doing anything that he can to try and avoid paying any type of support" and "playing games with not providing the court with proof of his income." It found it "not credible" that "he's gone from a $540,000 job to $15,000 a month."

B.      *Discussion.*

"[T]he amount of a temporary spousal support award lies within the court's sound discretion, which will only be reversed on appeal on a showing of clear abuse of discretion. [Citation.]" (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327.) "[T]he appropriate test of abuse of discretion is whether or not the trial court

(*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 932.) Accordingly, we accept Jessica's representations about what the lodged documents showed.

[4]      The last page(s) of the declaration are missing from our record. Thus, it is not clear that the declaration was signed under penalty of perjury.

[5]      The record does not explain the discrepancy between Jessica's figure of $532,795.30 and the trial court's figure of $538,795.

exceeded the bounds of reason, all of the circumstances before it being considered. [Citations.]" (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598.)

The trial court could properly find that Pedro's 2021 income and expense declaration was not believable. His 2020 declaration had been proven to be false. "'*Falsus in uno, falsus in omnibus*.'" (*Poor v. W.P. Fuller & Co.* (1916) 30 Cal.App. 650, 655; see also CACI No. 107.) On that state of the evidence, the only credible evidence of Pedro's *likely* 2021 income was his *actual* 2020 income, as shown by Jessica.

Separately and alternatively, even assuming the trial court believed the 2021 declaration, it could properly impute additional income to Pedro based on his earning capacity. (Fam. Code, § 4320, subd. (g); *In re Marriage of Stephenson* (1995) 39 Cal.App.4th 71, 76-81.) Moreover, it could properly rely on his *actual* 2020 income as evidence of his earning capacity.

Accordingly, the trial court did not abuse its discretion by basing spousal support on Pedro's 2020 income.

V

DISPOSITION

The orders appealed from are affirmed.  Jessica is awarded costs on appeal against Pedro.

CERTIFIED FOR PUBLICATION

RAMIREZ _____
P. J.

We concur:

SLOUGH _____
J.

FIELDS _____
J.

13