Filed 9/16/25  Marriage of Carter CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of SHANNON CARTER and STEVEN CARTER. | |
| SHANNON CARTER, | D084417 |
| Respondent, | |
| v. | (Super. Ct. No. 18FL005793C) |
| STEVEN CARTER, | |
| Appellant. | |

APPEAL from postjudgment orders of the Superior Court of San Diego County, Laura H. Miller, Judge.  Affirmed.

Knowlton Family Law and Daniel R. Knowlton for Appellant.

Cage & Miles and John T. Sylvester for Respondent.

This is the fourth appeal in this marital dissolution action involving Steven Carter and Shannon Carter.  The first three appeals concerned the trial court's judgment of dissolution and its order denying Steven's request to set aside the judgment.  (*Carter v. Carter* (July 17, 2024, D080210, D081627)

[nonpub. opn.] (*Carter I*); *Carter v. Carter* (Apr. 21, 2025, D082959) [nonpub. opn.] (*Carter II*).)  In our prior opinions, we affirmed the trial court's judgment and order, except for the vacation pay award, which we reversed for recalculation.

In this appeal, Steven challenges postjudgment orders modifying child support and denying his request to modify spousal support.  He argues the court abused its discretion in denying his requests to increase spousal support, extend its termination, and eliminate a cap on the amount of additional support he receives from Shannon's receipt of stock option income.  Steven also contends the court abused its discretion when it selected an accounting method used to calculate additional child support based on receipt of stock option income.

Finding no reversible error, we affirm the trial court's orders.

FACTUAL AND PROCEDURAL BACKGROUND[1]

A.  *Parties and Background*

Shannon and Steven married in November 2007, and have two children, born in 2010 and 2012.  Before marriage, they lived in Iowa and moved to Tennessee, where Shannon pursued her Ph.D.  Steven practiced law in both states.  They then moved to California, where Shannon attended Stanford Law School.  Steven worked in a nonattorney role at Stanford.  After law school, Shannon initially worked at an intellectual property law firm.

She began working for Arena Pharmaceuticals (Arena) in 2013, where she earned a salary, bonus, and equity compensation, including stock options.

---

[1]    More detailed accounts of the factual and procedural background were set forth in *Carter I* and *Carter II*.  Here, we summarize the pertinent events, drawing on our prior opinions.

2

Steven worked in nonattorney roles at the University of California, San Diego (UCSD) from 2008 until 2017, when he became mostly unemployed for a period of time.

B. *Dissolution Proceedings*

In May 2018, Shannon filed for divorce. Later that month, Steven filed a request for order for child and spousal support, including a percentage of Shannon's bonus income under *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 (*Ostler-Smith*). The dissolution proceedings went on for several years, including as to temporary support issues.

The case went to trial in October 2021 and the trial court issued its decision from the bench. The court: (i) determined it had jurisdiction to, and did, apply the *Ostler-Smith* percentages to set temporary support arrears on Shannon's bonus and stock options from 2019 to 2021; (ii) set spousal support for Steven at $1,000 monthly plus an *Ostler-Smith* percentage, with a $35,000 annual cap and termination date of September 30, 2023; (iii) addressed equity award treatment, including selecting the allocation method for stock options under *In re Marriage of Nelson* (1986) 177 Cal.App.3d 150; (iv) adopted Steven's vacation pay calculations; and (v) awarded some, but not all, attorney fees requested by Steven. The court deferred the arrears payments, with the stock option portion of the spousal support arrears stayed pending appeal, and the other child and spousal support arrears due at six months or one year.

C. *Prior Appeals*

Steven and Shannon both appealed from the original judgment of February 2022 (D080210) and a corrected judgment of October 2022 (D081627). We consolidated those two appeals and decided them together in *Carter I* in July 2024. We ruled that: (1) the trial court's alleged error in

3

using net values for calculating arrears based on restricted stock units (RSUs) and performance restricted stock units (PRSUs) was moot because the court had corrected the calculation; (2) the trial court committed no reversible error in denying Steven's motions for reconsideration and to set aside the judgment based on fraud; and (3) the trial court committed no error in finding clerical error as the basis for entering the corrected judgment.

In April 2025, our opinion in *Carter II* affirmed the trial court's order denying Steven's request to set aside the judgment. We held that Steven's arguments were not proper on appeal because they had already been addressed and rejected in *Carter I*. We also rejected his arguments that the court erred in entering the corrected judgment nunc pro tunc and in not allowing him to present live testimony.

D. *Steven's Postjudgment Motion*

In April 2022, Steven filed a motion to modify his "ongoing child and spousal support monthly payments" and "remove the cap" on his "yearly spousal support." He claimed Shannon's income increased by $1,200 monthly and she received more than $6.2 million dollars "in a stock option buy out when [Arena] sold." He conceded most applicable Family Code[2] section 4320 factors from trial were "still effective," except for the factor regarding Shannon's increased ability to pay because she was "making even more money and also received a very large lump sum payment." He argued the spousal support cap was "manifestly unfair" because the court "ignore[d] the importance of the options" and that they "traded annual pay for holding options that could make millions of dollars of difference within a matter of a couple of short years."

---

[2]    Undesignated statutory references are to the Family Code.

4

In response, Shannon argued Steven misled the court by omitting over $700,000 income he received from his own portion of a cashout of the parties' community stock, and that he incorrectly attributed his portion of that stock to her. She claimed the accelerated stock cash resulted in Steven's stock "almost doubling in price" and, as a result, he "likely more than doubled [their] highest combined income (with his income and community property stocks alone)" and would "receive dividends on that money for years to come." She indicated she was unemployed and requested spousal support be "terminated this year instead of next year."

In February 2023, the family court appointed a joint expert to address the issues Steven raised in his motion. The expert was tasked with analyzing the income Shannon received since trial, payments made by her to Steven for support, "stock division, property transfers, payments per the judgment, tax implications by either party and income received by [Steven]" since January 2022.

In November 2023, Shannon filed an updated income and expense declaration showing she was employed as a patent attorney earning $31,250 per month. In a supporting memorandum, she argued Steven "has not met his burden to support an upward modification of spousal support" because he failed to show "the original spousal support order was not enough to satisfy his needs." She also noted "the marital standard of living is only one factor" in the court's analysis and that the court has "broad discretion in determining the spousal support issue."

At an evidentiary hearing in March 2024, the court-appointed expert testified she was retained to calculate the additional support Shannon owed Steven. She prepared a report showing that Steven had $669,115.83 of the community property gross proceeds from the Arena stock cashout. Her report

5

noted "[t]he parties have a conflict with regard to the interpretation of the [j]udgment for calculating additional child support on stock option income." It therefore set forth four proposed methods of dealing with stock option income, capital gains, and community property components for support purposes.

Method 1 and method 2 proposed calculating "additional child support on stock option income and capital gains based on only [Shannon's] separate property income" and excluded the gain from the sale of stock in the merger. Method 2 also included one-half of Shannon's community property income in the calculation. Method 3 calculated the "additional support on stock option income and capital gains based on [Shannon's] separate property income," and her "separate property gain on the sale of stock from the merger." Method 4 calculated the "additional support on stock option income and capital gains based on [Shannon's] separate property income and half of [her] community property income," and her "separate property and half of community property gain on the sale of stock from the merger." None of the methods factored in Steven's one-half community property gain from the Arena stock cashout.

Steven argued in favor of method 4, as he maintained it was "the only choice of the four that reflects what was actually ordered" by the prior court. He said there was "confusing terminology" in how the prior court used community property and separate property, but that the order should use "all income from all sources," which is was what method 4 did. By contrast, Shannon contended method 1 or method 3 was appropriate because they did not include her community property income. She felt these methods were consistent with the intention of the prior court, which "did not mean to include either parties['] community party income."

6

E. *The Court's Orders*

The court granted Steven's request to modify child support. The court determined method 4 was appropriate for assessing arrears from Shannon's income for the orders before May 2022 because "it is consistent with the terms of the [j]udgment and includes all income for Shannon whether it was community or separate." The court noted "the inherent unfairness of the application of one-half community income to Shannon but not to Steven," however it was "without jurisdiction to rectify" the unsuccessfully appealed and final orders.

The court made clear it had jurisdiction to modify support after Steven filed his motion. For income from May 2022, the court ordered the application of method 3, which "excludes community property income for both parties." The court understood it "results in a new and possibly even more complicated calculation, however this is the methodology that needs to be utilized in order to prevent a windfall to Steven." Thus, from May 2022 through June 2023, Shannon was required to pay Steven base child support of $1,969, with all other additional income for either party being considered for additional support based on a two-way *Ostler-Smith* bonus chart. Beginning July 2023, child support was $2,163, also with the *Ostler-Smith* bonus chart for additional income of either party.

The court denied Steven's request to modify spousal support. It noted it "made extensive findings" under section 4320 at the time of trial, and that "the change in circumstances pertains to the buyout and acceleration of [Shannon's] stock options which resulted in Shannon receiving over $7M." The court viewed Steven's argument at the evidentiary hearing that "the court was incorrect" and that "the marital standard of living was much higher" as "an impermissible collateral attack on the court's prior ruling."

7

Additionally, "[t]he fact that Shannon's company was purchased after the date of separation resulting in a windfall does not change the marital standard of living." Moreover, "Steven's position that Shannon should dip into what is now her savings to pay Steven ongoing spousal support at a level considerably higher than the marital standard of living is not persuasive."

The court explained that all other "[s]ection 4320 factors addressed by the court at trial other than those addressed herein were not addressed during this evidentiary hearing as they remain unchanged." "In viewing the totality of the circumstances and analyzing all [section] 4320 factors, the court finds that there is no basis to modify the trial court's orders regarding spousal support. The support orders . . . are consistent with the parties' marital standard of living."

## DISCUSSION

Steven argues the trial court abused its discretion in denying his requests to increase his spousal support and in calculating child support. We disagree.

A. *Legal Principles*

"A spousal support order is modifiable only upon a material change of circumstances since the last order. 'Change of circumstances' means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. It includes all factors affecting need and the ability to pay. Where there is no substantial evidence of a material change of circumstances, an order modifying a support order will be overturned for abuse of discretion." (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246 (*West*).) " 'Absent a change of circumstances, a motion for modification is nothing more than an impermissible collateral

8

attack on a prior final order.' " (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1479.)

"The trial court has broad discretion in deciding whether to modify a spousal support order based upon changed circumstances." (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 836.) "In exercising its discretion, the trial court considers the same criteria set forth in section 4320 as it was obligated to consider in making the initial support order." (*Id.* at p. 836.)[3]

---

[3] Section 4320 provides: "In ordering spousal support under this part, the court shall consider all of the following circumstances:

"(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:

"(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.

"(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.

"(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party.

"(f) The duration of the marriage.

"(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.

"(h) The age and health of the parties.

"Although by statute the trial court must consider section 4320 factors in deciding whether to modify a spousal support order, the statute does not purport to require the court to address each factor expressly." (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 602 (*Diamond*).) Further, "[a]fter considering the marital standard of living along with the other statutory factors, 'the court may "fix spousal support at an amount greater than, equal to or less than what the supported spouse may require to maintain the marital standard of living, in order to achieve a just and reasonable result under the facts and circumstances of the case." ' " (*In re Marriage of Grimes & Mou* (2020) 45 Cal.App.5th 406, 425.) " 'While spouses must support each other during marriage [citation], the court has been given greater discretion in marital dissolutions to deny spousal support altogether or to limit such support in an amount and duration that reflects the ability of both parties in contemporary unions to provide for their own needs.' [Citation.] 'The law . . . entitles either spouse to postdissolution support for only so long as necessary to become self-supporting.' " (*Id*. at p. 425.)

---

"(i) All documented evidence of any history of domestic violence . . . between the parties or perpetrated by either party against either party's child . . . .

"(j) The immediate and specific tax consequences to each party.

"(k) The balance of the hardships to each party.

"(l) The goal that the supported party shall be self-supporting within a reasonable period of time. Except in the case of a marriage of long duration . . . . However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the factors listed in this section . . . and the circumstances of the parties.

"(m) The criminal conviction of an abusive spouse shall be considered in making a reduction or elimination of a spousal support award . . . .

"(n) Any other factors the court determines are just and equitable." (§ 4320.)

"The court has discretion as to the weight it gives to each factor [citation], and then ' "the ultimate decision as to amount and duration of spousal support rests within its broad discretion and will not be reversed on appeal absent an abuse of [its] discretion." ' " (*In re Marriage of Shimku*s (2016) 244 Cal.App.4th 1262, 1273.) " 'In exercising its discretion the trial court must follow established legal principles and base its findings on substantial evidence. . . .  If the trial court conforms to these requirements its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court.' " (*West, supra,* 152 Cal.App.4th at p. 246.)  " ' "Because trial courts have such broad discretion, appellate courts must act with cautious judicial restraint in reviewing these orders." ' " (*In re Marriage of McLain* (2017) 7 Cal.App.5th 262, 269.)

Likewise, we review a trial court's determination to grant or deny a request for modification of a child support order for an abuse of discretion. (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527.)  Under this standard, we consider only " 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.' " (*Id.* at p. 527.)  " 'We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order.' " (*Ibid*.)  The order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found.  (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1233–1234.)

B. *The Doctrine of Implied Findings Applies*

As an initial matter, neither party requested a statement of decision. Section 3654 specifically provides as to family law cases that a trial court

11

shall render a statement of decision regarding an order modifying a support order if requested by either party. (§ 3654.) When a party fails to request a statement of decision, the doctrine of implied findings applies. (*In re Marriage of Cauley* (2006) 138 Cal.App.4th 1100, 1109 ["[W]here a party remains silent at the hearing and fails to bring the issue to the trial court's attention, he or she waives the right to a statement."].)

" 'Under the doctrine of "implied findings," when parties waive a statement of decision expressly or by not requesting one in a timely manner, appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence.' " (*In re Marriage of McHugh* (2014) 231 Cal.App.4th 1238, 1248.) "A party who does not request a statement of decision may not argue the trial court failed to make any finding required to support its decision." (*Id.* at p. 1248.)

Here, because Steven waived a statement of decision, we may imply findings on each section 4320 factor for the court's spousal support order for which there is substantial evidence. We may also imply findings necessary to support the court's application of method 3 to its *Ostler-Smith* child support order if supported by substantial evidence.

### C. The Court Did Not Abuse Its Discretion in Denying Steven's Request to Modify Spousal Support

The parties do not dispute the "buyout and acceleration" of Shannon's stock options constituted a change of circumstances since the last spousal support order. Nevertheless, in denying his request for modification, Steven argues that the court "failed to consider all [section] 4320 factors." We disagree.

The court explained it had "analyz[ed] all [section] 4320 factors," even the ones it did not specifically address at the evidentiary hearing because

12

they were "unchanged" since the court previously addressed them. It was not required to "expressly identify each factor." (*Diamond, supra*, 72 Cal.App.5th at p. 602.) Nor was it required to "set forth in writing or on the record how it has weighed each of them." (*Ibid.*) Accordingly, we do not find merit to Steven's argument that the court failed to consider all section 4320 factors.

Steven also contends the marital standard of living is "not mathematical," that the court's prior determination "is not governing" and that there are "exceptions to the initial setting" of the marital standard of living. As the court noted, at the evidentiary hearing, Steven "wanted to testify that the court was incorrect, and that the marital standard of living was much higher." The court considered his argument to be "an impermissible collateral attack on the court's prior ruling." (See, e.g., *In re Marriage of Hoffmeister* (1987) 191 Cal.App.3d 351, 364 ["Unless respondent can establish by credible evidence that she had a standard of living at the time of separation of the parties that was higher than that provided by the prior award, her motion for modification is no more than an attempt to collaterally attack the prior decree."].)

Even so, the court evaluated Steven's argument, analyzed the income and expense declarations introduced at the hearing and determined the purchase of Shannon's company "after the date of separation . . . [did] not change the marital standard of living." "[E]ach and every income and expense declaration submitted by Steven throughout the . . . litigation of this case, including for this evidentiary hearing reflect total expenses of $8,000-11,025 per month." The court's determination is supported by substantial evidence and falls within its "broad discretion . . . to fairly exercise the weighing process determination." (*In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 481 (*Smith*).)

13

Further, Steven misunderstands the trial court's findings when he claims it found he had "unmet needs." On the contrary, in rejecting Shannon's request for a cap on child support, the court found there was "a significant disparity in the living situation for the children" and that Steven should "have the ability to offer adequate housing for the children that is superior to what he is currently providing." Thus, rather than finding Steven had "unmet needs" due to an inadequate level of spousal support, the court found the children's need for adequate housing was not being met by the current level of child support. (*In re Marriage of Ficke* (2013) 217 Cal.App.4th 10, 22 ["Child support is one thing, spousal support quite another."].)

Having failed to meet his burden to show an upward modification of spousal support is warranted, the trial court acted within its sound discretion in denying Steven's request. (*Smith, supra*, 225 Cal.App.3d at p. 480.)

D. *The Court Did Not Abuse Its Discretion In Modifying Child Support*

Once again, there is no dispute that changed circumstances occurred in the form of the buyout and acceleration of Shannon's stock options. Steven also does not object to the updated calculation of Shannon's "base" child support based on the buyout of her stock options. He does, however, challenge the updated calculation of the *Ostler-Smith* award of additional support for Shannon's ongoing receipt of stock income moving forward. He contends the court selected "the wrong method (method 3)" for calculating child support payments from May 2022 and that the court must "be consistent and apply method 4 to both periods (before and after May 2022)" because it includes stock option income and capital gains from community property for *Ostler-Smith* purposes. We disagree.

14

Statutory guidelines govern both temporary and permanent child support.  (§ 4050 et seq.)  " 'The guideline amount of child support, which is calculated by applying a mathematical formula to the relative incomes of the parents, is presumptively correct.' "  (*Anna M. v. Jeffrey E.* (2017) 7 Cal.App.5th 439, 446.)  The formula is based on annual gross income, which is defined as " 'income from whatever source derived . . . .' "  (*Id.* at p. 446, citing § 4058.)  An *Ostler-Smith* provision is " 'an additional award, over and above guideline support," meant to "capture fluctuations in the supporting spouse's income . . . .' "  (*In re Marriage of Minkin* (2017) 11 Cal.App.5th 939, 949.)  Its purpose is to capture fluctuations in the supporting spouse's income that are not included in a flat rate amount of support.  (*Id.* at p. 949.)  As explained in *In re Marriage of Kerr* (1999) 77 Cal.App.4th 87, 95, the family court may award as child support "a percentage of uncertain earnings" in order to avoid "an indefinite number of future hearings at which the details of income, expenses, investment success or failure, tax consequences and fairness must be reevaluated."  (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 352.)

Steven argues the court "committ[ed] a collateral attack on a prior ruling" and "violat[ed] res judicata" by modifying the way the *Ostler-Smith* award was originally calculated.  The court, however, recognized that for the period until May 2022, when Steven filed his motion, the court did "not have jurisdiction to retroactively modify the terms of the [j]udgment."  It therefore applied method 4 for the earlier period because that was consistent with the terms of the judgment and included all Shannon's community and separate income.  It also tracked the prior judgment and excluded Steven's stock option income.  Thus, by tracking how the prior judgment calculated the *Ostler-Smith* award, the court did not modify it, collaterally attack it or

15

violate the doctrine of res judicata. (See, e.g., *In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 625 ["The trial court properly rejected father's attempt to modify the childcare support order retroactively."].)

Once Steven filed his motion in May 2022, however, the court was able to modify the way the *Ostler-Smith* award was calculated from that point forward. (*Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 26 ["the statutory provisions 'permit[ ] the trial court to make its ruling retroactive to the filing date of the motion, but no earlier' "].) Steven nevertheless argues that the court selected "the wrong method (method 3)" over method 4 for the *Ostler-Smith* calculation moving forward. He complains the court erred when it omitted Shannon's one-half of community property income after the divorce and her one-half of the community property gain on the sale of stock from the merger.

The court noted the "inherent unfairness" of including one-half of Shannon's community stock income, but not Steven's, and recognized it only had jurisdiction to rectify the situation after May 2022. After considering the expert's report, the parties' financial circumstances and evaluating their arguments, the court found it necessary to apply method 3 "to prevent a windfall to Steven," even though it may result in a "new and possibly even more complicated calculation." Faced with multiple complex methods of applying the *Ostler-Smith* award going forward, the court selected the method that avoided an unfair windfall to either party. Although the court did not elaborate further, the absence of additional findings is legally immaterial because of Steven's failure to request a statement of decision. Because the doctrine of implied findings applies, we infer the court made and considered all such additional findings supporting the application of

16

method 3 over method 4.[4]  We therefore find no abuse of discretion in the family court's modification of child support.

DISPOSITION

The postjudgment orders are affirmed.


BUCHANAN, J.

WE CONCUR:


IRION, Acting P. J.


DATO, J.

---

[4]    For example, the expert's report appears to show the parties' community property stock was distributed in 2022 and that Shannon had no community property income in 2023.  To the extent community income no longer existed, method 3 properly excluded it.

17